# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL PICARD,

        Plaintiff,

– against –

DARCEL D. CLARK, in her official capacity
as District Attorney for Bronx County,
MICHAEL MAGLIANO, in his official
capacity as Chief of Public Safety for the New
York Unified Court System,

        Defendants.

No. 19 Civ. 3059(DLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Brian Hauss (BH-8861)
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
212.549.2500
bhauss@aclu.org

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 6

   I.   Mr. Picard has standing to challenge the Act. ...................................................... 7

      A.   The Act arguably proscribes Mr. Picard's speech............................................. 9

      B.   Mr. Picard faces a credible threat of prosecution under the Act. ................... 14

   II.   The Act is substantially overbroad. ..................................................................... 17

   III.   District Attorney Clark is a proper defendant. ..................................................... 20

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Am. Tel. & Tel. Co. v. State Tax Comm'n*, 462 N.E.2d 1152, 61 N.Y.2d 393 (1984).................. 13

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ..................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 6

*Avitabile v. Beach*, 277 F. Supp 3d 326 (N.D.N.Y. 2017)........................................................ 21, 22

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ............................................. 8

*Baez v. Hennesy*, 853 F.2d 73 (2d Cir. 1988) ....................................................................... 13, 21

*Barzillai v. United States*, 137 Fed. Cl. 788 (2018).................................................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 7

*Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ................................................ 6

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) ........................................................... 14

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK)(JCF),
2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013)........................................................................ 21

*Cox v. Louisiana*, 379 U.S. 559, 560 (1965)......................................................................... 19

*Craft v. Vill. of Lake George*, 39 F. Supp. 3d 229 (N.D.N.Y. 2014) ........................................... 17

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006)...................................................................... 17

*Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457 (11th Cir. 1996)............................... 8

*Fordyce v. City of Seattle*, 55 F. 3d 436 (9th Cir. 1995)........................................................ 15

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) ................................................................ 18

*Gooding v. Wilson*, 405 U.S. 518 (1972).............................................................................. 14

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) ..................................................................... 14

*Kentucky v. Graham*, 473 U.S. 159 (1985)............................................................................ 20

*Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000) ........................................................... 7

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)...................................... 8, 14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)................................................................ 7

*Maloney v. Cuomo*, 470 F. Supp. 2d 205 (E.D.N.Y. 2007) ......................................... 22

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) ............................................................ 19

*NAACP Anne Arundel Cty. Branch v. City of Annapolis*, 133 F. Supp. 2d 795 (D. Md. 2001) ... 19

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) ............................... 8, 13, 16

*New York Civil Service Commission v. Snead*, 425 U.S. 457 (1976) (per curiam) ..................... 16

*Nolan v. Cuomo*, No. 11 CV 5827(DRH)(AKT), 2013 WL 168674 (E.D.N.Y. Jan. 13, 2013)... 22

*North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999)............................... 13

*Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341 (2d Cir. 2008)................................. 9, 13

*People v. Iannicelli*, --- P.3d ----, 2017 WL 5900363 (Co. Ct. App. Nov. 30, 2017).................. 12

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).......................................................... 19

*Ricciuti v. New York City Transit Auth.*, 941 F.2d 119 (2d Cir. 1991) .......................................... 7

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).................................................... 18

*Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007) ................................................................ 6

*Rothman v. City of Chicago*, 2003 WL 21148180 (N.D. Ill. May 16, 2003) .............................. 16

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988)......................................................... 7

*Schulz v. Williams* 44 F.3d 48 (2d Cir. 1994) ............................................................ 21

*Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) ........................................ 17

*Seegars v. Gonzalez*, 396 F.3d 1248 (D.C. Cir. 2005)............................................................. 15

*Steffel v. Thompson*, 415 U.S. 432 (1974) .................................................................. 8, 10, 15

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................................ passim

*Turney v. Pugh*, 400 F.3d 1197 (9th Cir. 2005) ............................................................. 18

*United States v. Heicklen*, 858 F. Supp. 2d 256 (S.D.N.Y. 2012) ...................................... 8, 12, 18

*United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014) .................................................... 19

*United States v. Thirty-seven (37) Photographs*, 402 U.S. 363 (1971) ................................ 14

*Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) ............... 9, 12, 13

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988) ............................................... 8, 13

*Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146 (S.D.N.Y. 2006) ................................ 10

## Statutes and Rules

18 U.S.C. § 1504 .............................................................................................. 12

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 7

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

L.S.A. Rev. Stat. § 14:401 ..................................................................................... 19

N.Y.P.L. § 215.50 ............................................................................... 1, 4, 10, 11, 18

New York Civil Service Law § 72 ........................................................................... 16

New York County Law § 700 .................................................................................. 21

## Other Authorities

*Jury Nullification*, Black's Law Dictionary (11th ed. 2019) .......................................... 1

*Placard*, Merriam-Webster Online Dictionary ............................................................ 11

**INTRODUCTION**

Plaintiff Michael Picard challenges a provision of New York's criminal contempt statute that prohibits speech concerning the conduct of a trial within two hundred feet of a courthouse. N.Y.P.L. § 215.50 (7) (the "Act"). Since 2016, Mr. Picard has been traveling to courthouses throughout the northeast United States to inform the public about jury nullification.[1] On December 4, 2017, Mr. Picard was arrested by a senior New York Court Officer for advocating jury nullification on the public sidewalk outside the Bronx Hall of Justice. His possessions were confiscated and he was placed in a holding cell. The Bronx District Attorney's Office declined to prosecute because the arresting officer failed to measure whether Mr. Picard was within two hundred feet of the courthouse. Mr. Picard was eventually released from custody ten hours after his arrest. As a result of his arrest and near brush with prosecution, Mr. Picard is too afraid to continue his jury nullification advocacy outside New York courthouses.

To vindicate his First Amendment rights, Mr. Picard brought this pre-enforcement challenge against Defendants Michael Magliano, the Chief of Public Safety for the New York Unified Court System, and Darcel Clark, the District Attorney for Bronx County, in their official capacities. As set forth in the Complaint, the Act is unconstitutional in at least three respects. First, the Act is facially unconstitutional because it imposes a content-based restriction on speech in traditional public forums. Second, the Act is facially unconstitutional because it is substantially overbroad, criminalizing a great deal of protected speech concerning the criminal justice system that poses no imminent threat to the administration of justice. Third, the Act is

---

[1] "Jury nullification" has been defined as: "A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." *Jury Nullification*, Black's Law Dictionary (11th ed. 2019).

unconstitutional as applied to speech advocating jury nullification. Mr. Picard seeks a declaration that the Act is unconstitutional and an injunction restraining Defendants from enforcing the Act.

Defendants' motions to dismiss the case are meritless. Chief Magliano argues that Mr. Picard lacks standing. But Mr. Picard easily satisfies the relaxed Article III standard applied to pre-enforcement challenges against criminal prohibitions on speech. Under that standard, a plaintiff has standing if they allege an intention to: (1) engage in speech or conduct arguably affected with a constitutional interest, (2) that is arguably proscribed by the challenged law, and (3) there exists a credible threat of prosecution. First, Defendants do not dispute that Mr. Picard's jury nullification advocacy is constitutionally protected. Second, Mr. Picard's jury nullification advocacy is at least *arguably* proscribed by the Act, as demonstrated by the fact that Mr. Picard was arrested for violating the Act and escaped prosecution only because the arresting officer failed to measure Mr. Picard's distance from the courthouse. Although Chief Magliano does not believe the Act applies to Mr. Picard's jury nullification advocacy, his litigating position in this case is not binding on anyone, including himself or his successors in office. Finally, the Act's prior enforcement against Mr. Picard is more than sufficient to establish a credible threat of future prosecution if Mr. Picard were to resume his advocacy efforts. Simply put, Mr. Picard should not be forced to choose between speaking at the risk of another arrest or staying silent at the expense of his conscience.

Chief Magliano also argues that the Act is not substantially overbroad. He maintains that the Act prohibits only speech concerning a specific trial within two hundred feet of the courthouse in which that trial is taking place. But even if the Court were to adopt Chief Magliano's proposed interpretation, the Act would still be blatantly unconstitutional. Speech about the criminal justice system is core political speech, entitled to the full protection of the

First Amendment, even if it takes place within two hundred feet of a courthouse and even if it concerns a specific trial. Although courts have recognized that speech *intended* to improperly influence the outcome of a specific trial is not protected by the First Amendment, the Act includes no such criminal intent requirement. Instead, the Act expressly imposes a content-based restriction on speech. As a result, the Act criminalizes a significant amount of speech that could not plausibly influence the outcome of a criminal proceeding—such as a lone activist holding up a sign to protest narcotics prosecution across the street from the courthouse where the prosecution is taking place.

Finally, District Attorney Clark argues that the claims against her should be dismissed for lack of standing and failure to state a claim, because she is not alleged to have violated Mr. Picard's First Amendment rights. She suggests that Mr. Picard's constitutional challenge should instead be directed to the New York Attorney General. To the contrary, is well established that a plaintiff seeking to enjoin the enforcement of an unconstitutional law may join as a defendant any state official who plays a part in enforcing the challenged statute. In New York, the district attorney is usually the only official responsible for prosecuting violations of the penal law. District Attorney Clark is therefore a proper defendant because she is responsible for enforcing the Act at the Bronx Hall of Justice, where Mr. Picard wishes to resume his jury nullification advocacy.

Accordingly, this Court should deny Defendants' motions to dismiss.

## FACTUAL BACKGROUND

### New York's Criminal Contempt Statute

New York's criminal contempt statute provides, in relevant part:

> A person is guilty of criminal contempt in the second degree when he engages in any of the following conduct:

. . .

      7. On or along a public street or sidewalk within a radius of two hundred feet of any building established as a courthouse, he calls aloud, shouts, holds or displays placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial.

      Criminal contempt in the second degree is a class A misdemeanor.

N.Y.P.L. § 215.50. A class A misdemeanor is punishable by up to 364 days in jail. *Id.* § 70.15

**The Act's Application to Mr. Picard**

      Mr. Picard is a committed civil libertarian who strongly believes that jury nullification is an effective means to protest unjust laws. Complaint (ECF No. 1) ¶ 15. He seeks to inform people who oppose prosecutions for victimless crimes that, as jurors, they have the ability to stand up to state power. *Id.* Since 2016, Mr. Picard has advocated jury nullification by handing out flyers on public sidewalks outside courthouses throughout the northeast United States. *See id.* ¶¶ 16–18. He advocates for jury nullification outside courthouses because he believes that is the most relevant location to inform the public about jury nullification as a way to protest bad laws. *Id.* ¶ 18. He does not research which trials are occurring before visiting a courthouse, and he has never attempted to influence a juror's vote in a particular case. *Id.* ¶ 17.

      On December 4, 2017, Mr. Picard traveled to the Bronx County Hall of Justice to distribute jury nullification pamphlets. *Id.* ¶ 19. Standing on the public sidewalk outside the courthouse entrance, he held up a sign reading "Jury Info" and passed out flyers. *Id.* ¶ 21. The flyers read "No Victim? No Crime. Google Jury Nullification" on one side and "'One has a moral responsibility to disobey unjust laws'—Martin Luther King Jr." on the other. *Id.* Mr. Picard was not aware of any particular cases in which jurors were being impaneled or serving at the time, and he did not discuss any particular criminal proceedings with anyone. *Id.* ¶ 22.

Shortly after Mr. Picard began handing out flyers, an officer approached him and informed him that it is against the law to distribute flyers about jury nullification within two hundred feet of a courthouse. *Id.* ¶ 24. Mr. Picard asked to see the text of the penal code referring to the two-hundred foot limitation. *Id.* ¶ 25. He protested that he was standing on a public sidewalk and was permitted to distribute his informational flyers. *Id.* An officer threatened to arrest Mr. Picard unless he moved. *Id.* Mr. Picard refused to move and again requested to see the text of the penal code. *Id.* At this point, Court Security Sergeant Vincent Allis placed Mr. Picard under arrest. *Id.*, Exhibit A (identifying Sergeant Allis's rank). Sergeant Allis brought Mr. Picard into a holding cell inside the Bronx County Hall of Justice, confiscated his property, and informed Mr. Picard that he was being charged with violating the Act. *Id.* ¶ 26.

Several hours later, Assistant District Attorney Suzanna Talbot issued an Affidavit in Support of Declining/Deferring Prosecution. *Id.* ¶ 28, Exhibit A. The Affidavit states in relevant part: "The People decline to prosecute the instant matter due to insufficient evidence. On December 4, 2017, at 8:05am, arresting officer observed defendant on the sidewalk in front of the courthouse, holding and displaying a sign with the words printed JURY INFORMATION, and displaying pamphlets stating NO VICTIM NO CRIME. When the arresting officer approached Defendant and informed him that he needed to be 200 feet away from the courthouse to protest, the defendant refused to move. Since the officer did not measure the distance between the defendant and the courthouse, the People have insufficient evidence to meet their burden of proof at trial, the charges must be dismissed." *Id.*, Exhibit A. Mr. Picard was then transferred to New York Police Department's Bronx Central Booking facility, where he was detained for another five hours. *Id.* ¶ 29. He was eventually released from police custody around 6:00 PM, roughly ten hours after his arrest. *Id.*

Since his arrest, Mr. Picard has not advocated jury nullification within two hundred feet of a New York courthouse. *Id.* ¶ 31. He reasonably fears that, if he were to do so, he would be arrested and prosecuted for violating the Act. *Id.* ¶ 30. Were it not for the Act, Mr. Picard would continue his jury nullification advocacy outside New York courthouses, including in particular the Bronx Hall of Justice. *Id.* ¶ 31.

## ARGUMENT

Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 8(a)(2). Courts assess motions to dismiss for lack of subject matter jurisdiction, including lack of standing, under Rule 12(b)(1). *See Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden. The task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Id.* (citations omitted). Under these circumstances, the Court must accept the material factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See id.* (collecting cases).

Likewise, on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all the factual allegations in the complaint and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. *See Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). Through this lens, the Court must determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plausibility standard does not impose a probability requirement at the pleading stage, but simply asks whether the complaint presents sufficient facts to "permit a reasonable

inference" that the plaintiff is entitled to relief. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182–84 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Finally, under the "liberal pleading standards" of Rule 8(a)(2), a complaint "must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Dismissal under Rule 8(a)(2) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

## I. Mr. Picard has standing to challenge the Act.

Chief Magliano principally argues that Mr. Picard lacks standing to challenge the Act. To establish Article III standing, a plaintiff must show an "injury in fact," a sufficient "causal connection between the injury and the conduct complained of," and a "likel[ihood] that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). One "recurring issue . . . is determining when the threatened enforcement of a law creates an Article III injury." *Id.* at 158. This issue poses special problems when a law threatens to punish constitutionally protected activity, especially speech. "[W]ithout the possibility of pre-enforcement challenges, plaintiffs contesting statutes or regulations on First Amendment grounds face an unattractive set of options if they are barred from bringing a facial challenge: refraining from activity they believe the First Amendment protects, or risk civil or criminal penalties for violating the challenged law." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir.

2013) (internal quotation marks omitted) (quoting *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996)). Faced with such a Hobson's choice, many people will predictably self-censor, and the values protected by the First Amendment will be infringed even in the absence of an actual prosecution. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).

To address this problem, the Supreme Court has applied a "relaxed" Article III standard for pre-enforcement constitutional challenges. *Nat'l Org. for Marriage*, 714 F.3d at 689. In *Babbitt v. United Farm Workers National Union*, the Supreme Court held that a plaintiff may bring a pre-enforcement challenge if he alleges "[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." 442 U.S. 289, 298 (1979)); *accord Susan B. Anthony List*, 573 U.S. at 158–67. This standard applies regardless of whether the plaintiff challenges the statute on its face or as applied. *Steffel v. Thompson*, 415 U.S. 432, 473–75 (1974); *accord Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383–84 (2d Cir. 2015).

Chief Magliano does not dispute that Mr. Picard's expressive activities are protected under the First Amendment. *See* Memorandum of Law in Support of Defendant Michael Magliano's Motion to Dismiss the Amended Complaint (ECF No. 24) ("Magliano Mot. to Dismiss") at 13–14; *United States v. Heicklen*, 858 F. Supp. 2d 256, 270–75 (S.D.N.Y. 2012) (recognizing that jury nullification advocacy is constitutionally protected). However, Chief Magliano argues that Mr. Picard's expressive activities fall "outside the scope of any criminal conduct prohibited by the terms of the Act." Magliano Mot. to Dismiss at 7. Chief Magliano accordingly insists that "there is no reasonable prospect that the Act will be enforced against him in the future." *Id.* However, Chief Magliano's interpretation of the Act for purposes of this

litigation does not determine this Court's jurisdiction. Rather, Mr. Picard may establish standing by demonstrating that his speech is arguably proscribed by the Act and that he faces a credible threat of prosecution. As discussed below, Mr. Picard easily satisfies both requirements.

**A. The Act arguably proscribes Mr. Picard's speech.**

To satisfy *Babbitt*'s second prong, a plaintiff must allege an intention to engage in future conduct that is "'arguably . . . proscribed by [the] statute' they wish to challenge," taking into account circumstances such as a prior history of enforcement against the plaintiff for similar speech. *Susan B. Anthony List*, 573 U.S. at 162 (omission and alteration in original) (quoting *Babbitt*, 442 U.S. at 298). This is not a high threshold. In *Vermont Right to Life Committee, Inc. v. Sorrell*, for instance, the Second Circuit held that the Vermont Right to Life Committee ("VRLC") had standing to challenge a state campaign finance law because it reasonably believed that the law applied to its protected expression. Although the court acknowledged that "there may be other, perhaps even better," interpretations of the law that would exclude VRLC's expressive activities, it concluded that VRLC's interpretation of the law was "reasonable enough that it may legitimately fear that it will face enforcement of the statute by the State." 221 F.3d 376, 383 (2d Cir. 2000); *accord Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008). Notably, *Vermont Right to Life* reached this conclusion despite the fact that VRLC had never been threatened with enforcement under the challenged statute.

In this case, it is quite easy to see how the Act could conceivably apply to Mr. Picard's speech. The Act makes it a crime, within two hundred feet of a courthouse, to "call[] aloud, shout[], hold[] or display[] placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury

in connection with such trial." N.Y.P.L. § 215.50(7). Mr. Picard wishes to stand outside courthouses advocating jury nullification, including by holding up signs, passing out flyers, and having conversations about jury nullification with people outside the courthouse. Compl. ¶¶ 15–23, 30–31. Jury nullification advocacy—which asserts that jurors should acquit defendants in criminal prosecutions that the jurors conclude are unjust—at least arguably constitutes speech concerning the conduct of criminal trials being held in New York courthouses, or demanding a specified action or determination by jurors in such trials.

The fact that the Act was recently enforced against Mr. Picard lends considerable weight to the conclusion that his "intended speech is 'arguably proscribed' by the law." *Susan B. Anthony List*, 573 U.S. at 162. Courts routinely conclude that there is a credible threat of future enforcement when "there is a history of past enforcement . . . . against the same conduct." *Id.* at 164 (citing *Steffel*, 415 U.S. at 459). In *Susan B. Anthony List*, for example, the Supreme Court had "no difficulty" concluding that the plaintiff's intended speech was arguably proscribed by the challenged statute, where the government had "already found probable cause to believe that [the plaintiff] violated the statute" when it made similar statements in the past, even though the enforcement action was ultimately withdrawn.

Here, Sergeant Vincent Allis found probable cause to arrest and detain Mr. Picard under the Act. Compl. ¶¶ 26–27, 29. *See also, e.g.*, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 154 (S.D.N.Y. 2006) ("It is well established that an arrest without probable cause is a constitutional violation."). Although Assistant District Attorney Talbot declined to prosecute Mr. Picard, her affidavit reflects that the People declined prosecution simply because Sergeant Allis "did not measure the distance between the defendant and the courthouse," *not* because she concluded that Mr. Picard's speech fell outside the Act's scope. *Id.* ¶ 28, Exhibit A. Given that a

senior court security officer and an assistant district attorney both concluded that the Act prohibits Mr. Picard's jury nullification advocacy outside courthouses, it is easy to see why Mr. Picard reasonably fears future arrest and prosecution for engaging in similar speech in the future.

Chief Magliano insists that the prior enforcement action against Mr. Picard was simply a misapplication of the Act. Magliano Mot. to Dismiss at 11. He reads the statute to prohibit speech about court proceedings only in relation to a *specific* trial being held in the courthouse. *Id.* at 8 ("Specifically, the only topics subject to the strictures of the Act are 'the conduct of a trial being held in such courthouse,' 'the character of the court or jury engaged in such trial,' and a request or demand for 'any specified action or determination by such court or jury in connection with such trial." (quoting N.Y.P.L. 215.50(7)). Because Mr. Picard jury nullification advocacy "does not focus on any particular case currently on trial," Chief Magliano maintains that his speech is "beyond the scope of the Act." *Id.* at 12.[2]

Chief Magliano's interpretation of the Act may be plausible, but so is Mr. Picard's. In other cases, prosecutors have argued that similar statutory language criminalizes jury nullification advocacy outside courthouses *even when* the advocacy is not targeted to a specific trial. In *United States v. Heicklen*, the federal government indicted Julian Heicklen under the federal jury tampering statute, which criminalizes "attempts to influence the action or decision of any grand or petit juror of any court of the United States upon any issue or matter pending before such juror . . . by writing or sending to him any written communication, in relation to such issue

---

[2] Chief Magliano also argues that Mr. Picard's "conduct in handing out fliers is plainly beyond the reach of the Act." *Id.* at 8. To the contrary, the Act's prohibition on placards or signs concerning a trial could easily include flyers. "Placard," for example, has been defined as "a notice posted in a public place." *Placard*, Merriam-Webster Online Dictionary, https://bit.ly/2MGZtnt. Sergeant Allis, at least, believed that the Act applied to Mr. Picard's flyers. *See* Compl. ¶ 24. Regardless, Chief Magliano does not dispute that Mr. Picard's jury nullification advocacy includes the display of signs.

or matter." 18 U.S.C. § 1504. The indictment charged that Mr. Heicklen violated the statute by

"distribut[ing] pamphlets urging jury nullification immediately in front of an entrance to the

United States District Court for the Southern District of New York." *Heicklen*, 858 F. Supp. 2d at

261. Although there was "no allegation that Heicklen distributed the pamphlets in relation to a

specific case," the government argued that the pamphlets related to an "issue or matter" pending

before a federal juror "because they could encourage a juror to follow her conscience instead of

the law, thus affecting the outcome of a case." *Id.* at 275; *see also People v. Iannicelli*, --- P.3d --

--, 2017 WL 5900363, at *3 (Co. Ct. App. Nov. 30, 2017), *cert. granted*, --- P.3d ----, 2018 WL

3222342 (Co. Jul. 2, 2018).[3]

In this case, Sergeant Allis and Assistant District Attorney Talbot both adhered to

similarly broad interpretations of New York's criminal contempt statute, thus demonstrating that

Mr. Picard's interpretation of the Act is at least "reasonable enough" to satisfy Article III. The

fact that Chief Magliano now advances a narrower interpretation of the Act does not negate Mr.

Picard's standing. *Vermont Right to Life* is directly on point. There, the Vermont Attorney

General argued that "VRLC's fear of suit could not possibly be well-founded because the State

ha[d] no intention of suing VRLC for its activities." 221 F.3d at 383. The Second Circuit rejected

that argument, observing that there was "nothing that prevent[ed] the State from changing its

mind." *Id.* The State was "not forever bound, by estoppel or otherwise, to the view of the law

that it assert[ed] in [the] litigation." *Id.* (collecting cases). "In light of this uncertainty, the State's

representation [could not] remove VRLC's reasonable fear that it [would] be subjected to

penalties for its planned expressive activities." *Id.* To hold otherwise would "plac[e] VRLC's

---

[3] In both *Heicklen* and *Iannicelli*, the courts held that the respective jury tampering statutes were
potentially ambiguous, and applied the doctrine of constitutional avoidance to hold that the
statutes applied only to attempts to influence the outcome of a specific case. *Heicklen*, 858 F.
Supp. 2d at 266–75; *Iannicelli*, 2017 WL 5900363, at *5–7.

asserted First Amendment rights 'at the sufferance of' Vermont's Attorney General." *Id.* (quoting *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999)). In short, it did not "make a difference that the state denied that the plaintiff actually was subject to the challenged law. What mattered was that the plaintiff faced a 'credible threat' that the law would be enforced against it. That was enough to give standing." *Nat'l Organization for Marriage*, 714 F.3d at 690 (citing *Vermont Right to Life*, 221 F.3d at 383); *accord Pacific Capital*, 542 F.3d at 350.

The same principle applies here. Neither Chief Magliano nor the Attorney General's office has binding authority to interpret the Act. *See Am. Booksellers*, 484 U.S. at 395 ("[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); *Am. Tel. & Tel. Co. v. State Tax Comm'n*, 462 N.E.2d 1152, 61 N.Y.2d 393, 404 (1984) ("[A]n opinion of the Attorney-General is an element to be considered but is not binding on the courts."); *see also Baez v. Hennesy*, 853 F.2d 73, 77 (2d Cir. 1988) ("It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender."). Notably, District Attorney Clark has not endorsed Chief Magliano's interpretation of the Act. *See* Defendant Darcel Clark's Memorandum of Law in Support of Her Motion to Dismiss (ECF No. 26) ("Clark Mot. to Dismiss") at 13. Class But even if she had—or even if Chief Magliano or the Attorney General had binding authority to interpret the Act—there is nothing to prevent Defendants or their successors in office from taking a different view of the Act in the future. Mr. Picard, and likeminded individuals throughout New York, should not be

forced to risk arrest, prosecution, and jail time on the basis of Chief Magliano's litigating position in this case.[4]

### B. Mr. Picard faces a credible threat of prosecution under the Act.

To satisfy *Babbitt*'s third prong, a plaintiff must demonstrate that the "threat of future enforcement of the [challenged] statute is substantial." *Susan B. Anthony List*, 573 U.S. at 164. "The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." *Knife Rights*, 802 F.3d at 384. In general, the test "is quite forgiving to plaintiffs seeking such preenforcement review," and a credible threat will be found where the plaintiff's "fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (citations and internal quotation marks omitted). Where a plaintiff has alleged that their speech is arguably proscribed by an "ordinary criminal or civil punitive statute[]," courts "have presumed that the government will enforce the law." *Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013). That presumption applies even when the government "actively disputes" in litigation that the plaintiff is subject to the challenged statute. *Id.* at 197.

Chief Magliano argues that the Act was not actually enforced against Mr. Picard. He acknowledges that Mr. Picard's "expressive activity outside the Hall of Justice was interrupted by court officers, one of whom told Plaintiff he would be charged under the Act." Magliano Mot.

---

[4] Even if this Court were to hold that Mr. Picard lacks standing because the Act does not apply to his speech, that decision would not be binding on New York state courts. *See, e.g., Gooding v. Wilson*, 405 U.S. 518, 520 (1972) ("Only the Georgia courts can supply the requisite [narrowing] construction, since of course 'we lack jurisdiction authoritatively to construe state legislation.'") (quoting *United States v. Thirty-seven (37) Photographs*, 402 U.S. 363, 369 (1971))). Only a declaratory judgment and an injunction will effectively address Mr. Picard's well-founded fear of arrest and prosecution for his speech.

to Dismiss at 11. But because Mr. Picard "was neither charged nor prosecuted under the Act," Chief Magliano contends that Mr. Picard has not "suffered any First Amendment injury, much less one that was 'fairly traceable' to the Act.'" *Id.* It is well established, however, that "actual threats of arrest made against a specific plaintiff are generally enough to support standing as long as circumstances haven't dramatically changed." *Seegars v. Gonzalez*, 396 F.3d 1248, 1252 (D.C. Cir. 2005) (citing *Steffel*, 415 U.S. at 459)); *see also Susan B. Anthony List*, 573 U.S. at 158 ("When an individual is subject to such a threat [of enforcement], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." (citing *Steffel*, 415 U.S. at 459)).

If threats are sufficient to establish standing, actual arrest is more than enough, even if the government declines to pursue a conviction. *See Susan B. Anthony List*, 573 U.S. at 164 ("Here, the threat is even more substantial given that the Commission panel actually found probable cause to believe that SBA's speech violated the false statement statute," even though statutory enforcement proceedings were voluntarily terminated prior to final disposition.). In *Fordyce v. City of Seattle*, for example, the Ninth Circuit held that the plaintiff had standing to challenge the state wiretap act, because he had previously been arrested on the theory that the statute criminalized the recording of private conversations without the consent of all parties, even though the charges were dropped by the prosecuting attorney the day after his arrest. 55 F.3d 436, 438, 440 (9th Cir. 1995). Nothing that the wiretap act had not been construed by the Washington Supreme Court, the Ninth Circuit explained that standing was justified because the plaintiff "was, and still is, uncertain and insecure regarding his right *vel non* to videotape and audiotape private persons on public streets." *Id.* at 440.

In this case, Mr. Picard plainly satisfies the standard for bringing a pre-enforcement challenge to a law that criminalizes speech. He was not only threatened with arrest under the Act, he was actually arrested and detained for ten hours. Compl. ¶ 2. Furthermore, Assistant District Attorney Talbot declined prosecution only because Sergeant Allis failed to measure Mr. Picard's distance from the courthouse. *Id.* ¶ 28. Under these circumstances, it can hardly be said that Mr. Picard's fear of future arrest and prosecution for his jury nullification advocacy is "imaginary" or "wholly speculative." His fears are well founded, and his advocacy has been chilled. No more is required to invoke this Court's jurisdiction.

Chief Magliano's argument to the contrary principally relies on the Supreme Court's per curiam decision in *New York Civil Service Commission v. Snead*, 425 U.S. 457 (1976). Magliano Mot. to Dismiss at 9. *Snead*, however, did not concern a pre-enforcement challenge to a statute that prohibits constitutionally protected speech or conduct. In that case, the plaintiff alleged that she was placed on involuntary medical leave based on the findings of a physician chosen in a manner that violated New York Civil Service Law § 72. The State agreed that the physician's selection was contrary to the statute, so it was undisputed "that the statutory procedure which [she] challenged has not been applied to her." *Snead*, 425 U.S. at 458. Because the process challenged in *Snead* did not proscribe any constitutionally protected activity, the standard for pre-enforcement challenges to laws that chill speech or constitutionally protected conduct did not apply. *See Nat'l Organization for Marriage*, 714 F.3d at 689. The Supreme Court's decision in *Susan B. Anthony List*, not *Snead*, governs this case.[5]

---

[5] The other cases relied on by Chief Magliano, none of which are binding, are similarly inapposite. *See Barzillai v. United States*, 137 Fed. Cl. 788, 804 (2018) (holding that the plaintiff lacked standing to raise a due process challenge to a provision of the Internal Revenue Code governing rescission of penalties, because the plaintiff never requested a rescission); *Rothman v. City of Chicago*, 2003 WL 21148180, at *10 (N.D. Ill. May 16, 2003) (holding that plaintiff

**II. The Act is substantially overbroad.**

Chief Magliano further asserts that Mr. Picard lacks standing to raise a First Amendment overbreadth challenge to the Act. Magliano Mot. to Dismiss at 14. For the reasons set forth above, Mr. Picard has Article III standing to bring a facial overbreadth claim. *See Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006) ("[W]e allow a party to bring an overbreadth challenge where that party 'satisfies the [Article III] requirement of "injury-in-fact," and [where] it can be expected satisfactorily to frame the issues in the case.'" (quoting *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984))).

Although Chief Magliano has not moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), the thrust of his argument is that Mr. Picard fails to state a facial overbreadth claim, because the Act does not burden a substantial amount of protected expression. In particular, Chief Magliano argues that the Act "does not target general critiques of 'bad laws, advocacy of jury nullification unrelated to a particular trial, or any other protected speech." Instead, he argues, the Act "prohibits only expressive conduct that (i) occurs within 200 feet of a courthouse, (ii) consists of calling aloud, shouting, or holding placards or signs, and (iii) concerns 'the conduct of a trial being held in such courthouse,' the character of the judge or jury hearing 'such trial,' or the desired outcome of 'such trial.'" Magliano Mot. to Dismiss at 14–15.

Even if this Court were to adopt Chief Magliano's narrowing interpretation, the Act would *still* be unconstitutionally overbroad. Speech or expressive conduct in a traditional public

---

lacked standing to raise Equal Protection Clause and Americans with Disabilities Act challenges to a municipal ordinance that provided extra time for elderly people and people with certain disabilities to exercise a right of first refusal in real estate transactions actions); *Craft v. Vill. of Lake George*, 39 F. Supp. 3d 229, 236–37 (N.D.N.Y. 2014) (holding that the plaintiff lacked standing to raise an as-applied challenge to a village's seasonal permit requirement for signs, where there was no evidence that the village had ever applied the permit requirement against him, and holding that his facial challenge to the ordinance was mooted by legislative change).

forum concerning the conduct of a trial, the character of the judge or jury, or the desired outcome

of the proceeding is quintessential political expression. "[T]he criminal justice system exists in a

larger context of a government ultimately of the people, who wish to be informed about

happenings in the criminal justice system, and, if sufficiently informed about those happenings,

might wish to make changes in the system." *Gentile v. State Bar of Nev*., 501 U.S. 1030, 1070

(1991) (plurality op.); *id.* at 1034 (characterizing a defense attorney's criticism of his client's

indictment as "classic political speech"). Indeed, "it would be difficult to single out any aspect of

government of higher concern and importance to the people than the manner in which criminal

trials are conducted." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980). Such

expression is constitutionally protected in a traditional public forum in almost all circumstances,

regardless of whether it concerns a particular judicial proceeding. [6]

Courts have recognized a narrow exception to this general rule for speech that is *intended*

to inappropriately influence the outcome of a particular case. *See, e.g.*, *Turney v. Pugh*, 400 F.3d

1197, 1201 (9th Cir. 2005) (holding that speech knowingly made to jurors outside the context of

an official proceeding and "*with the intent to influence the outcome of a specific case*" was not

protected by the First Amendment); *accord Heicklen*, 858 F. Supp. 2d at 274–75. As Chief

Magliano himself points out, New York's tampering statute itself "prohibits communicating with

a juror 'with intent to influence the outcome of an action or proceeding.'" Magliano Mot. to

Dismiss at 15 (quoting N.Y.P.L. § 215.25). The Act, on the other hand, includes no such intent

requirement. "[T]he lack of a specific intent requirement heightens the discrepancy between the

[Act's] legitimate scope and its intrusion on protected activities." *NAACP Anne Arundel Cty.*

---

[6] Defendants do not dispute Mr. Picard's allegation that the Act's restriction on speech within
two hundred feet of a courthouse encompasses speech in traditional public forums, such as
public streets and sidewalks. Compl. ¶¶ 3, 36.

*Branch v. City of Annapolis*, 133 F. Supp. 2d 795, 812 (D. Md. 2001); *see also, e.g.*, *United States v. Sayer*, 748 F.3d 425, 435 (1st Cir. 2014) (upholding the federal interstate stalking statute against an overbreadth challenge on the ground that the statute "clearly targets conduct performed with serious criminal intent").

The absence of a criminal intent requirement also serves to distinguish the Act from the anti-picketing statute at issue in *Cox v. Louisiana*, which prohibited "pickets or parades" carried out "in or near a building housing a court of the State of Louisiana" with "the intent of interfering with, obstructing, or impeding the administration of justice." 379 U.S. 559, 560 (1965) (quoting L.S.A. Rev. Stat. § 14:401). The Supreme Court upheld the statute as a "narrowly drawn [restriction] to punish specific conduct that infringes a substantial state interest," namely preventing judicial proceeding from "influence or domination by either a hostile or friendly mob." *Id.* at 562, 564. The Act at issue in this case is not so narrowly drawn. It proscribes a significant amount of expression that is neither intended to obstruct justice, nor likely to exercise improper influence over judicial proceedings. A lone activist who stands across the street from a courthouse protesting a prosecution poses no estimable threat to the judicial system, but she would be a committing a crime under New York law. Because the Act proscribes a significant amount of constitutionally protected speech regarding judicial proceedings, it is substantially overbroad.[7]

---

[7] In lieu of a criminal intent requirement, the Act defines proscribed speech in terms of its subject matter. But this limitation only exacerbates the Act's unconstitutionality. Because the Act facially "require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred," it is indisputably content based. *McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014). It is therefore subject to strict scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). Defendants do not argue that Mr. Picard has failed to state a First Amendment content-discrimination claim, nor do they contend that the Act could survive strict scrutiny.

### III.     District Attorney Clark is a proper defendant.

District Attorney Clark argues that the claims against her must be dismissed for lack of standing and failure to state a claim. First, she argues that Mr. Picard lacks standing *against her* because his fear of future prosecution "by the Bronx District Attorney's office based on the criminal contempt statute is no more than rank speculation." Clark Mot. to Dismiss at 12. Instead, she argues, Mr. Picard "should challenge the constitutionality of the statute, if at all, as against the New York Attorney General." *Id.* at 13. Second, District Attorney Clark asserts that dismissal is warranted under Rule 8(a)(2) and Rule 12(b)(6) because Mr. Picard has "failed to allege any facts that specify what action [she] took other than to assert that a member of [her] office signed a document reflecting that the district attorney's office declined to prosecute plaintiff related to his arrest on December 4, 2017." *Id.* at 7. *See also id.* at 14 (arguing that the "action should be dismissed as to defendant Clark pursuant to Rule 12(b)(6), as there are no facts alleged to support any claim against this defendant").

District Attorney Clark fails to appreciate the nature of Mr. Picard's claims. She is named as a defendant in her official capacity as the District Attorney for Bronx County. Compl. ¶ 6. Whereas "personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," an official-capacity suit "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations and internal quotation marks omitted). In other words, an official-capacity claim "is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166.

Because Mr. Picard's claim is effectively against the State of New York as the real party in interest, he does not need to allege any individualized wrongdoing by District Attorney Clark

in order to obtain relief. "It is well-settled that a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act." *Schulz v. Williams* 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citation and internal quotation marks omitted). In New York, it is "the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed." New York County Law § 700; *see also Baez*, 853 F.3d at 77 ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."). District Attorney Clark thus bears responsibility for enforcing the Act throughout Bronx County, including at the Bronx Hall of Justice, where—but for the Act—Mr. Picard would resume his jury nullification advocacy. Compl. ¶ 31. As discussed above, Mr. Picard's standing to challenge the Act is based on his well-founded fear of prosecution. These allegations suffice to state an official-capacity claim against District Attorney Clark for declaratory and injunctive relief.[8]

   *Avitabile v. Beach*, 277 F. Supp 3d 326 (N.D.N.Y. 2017), illustrates the point. In that case, Matthew Avitabile brought a pre-enforcement challenge to a New York law criminalizing the possession of electronic dart and stun guns, naming his local district attorney, James Sacket, and the New York State Police Superintendent as defendants. *Id.* at 329. District Attorney Sacket moved to dismiss for lack of standing and under various immunity principles. *Id.* "[T]here [was] no indication that the District Attorney has articulated any specific policy positions regarding enforcement of New York's stun gun ban. Nor [was] there any indication that the District Attorney has made any specific statements that might be construed as targeting Avitabile's

---

[8] To the extent District Attorney Clark argues that Mr. Picard has failed to state a claim for some other reason, she has failed to provide argument or authority supporting such a contention. It is therefore waived. *See, e.g.*, *Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK)(JCF), 2013 WL 4045326, at * 1 n.3 (S.D.N.Y. Aug. 9, 2013) (collecting cases).

conduct in particular." *Id.* at 331. But the district court held that Avitabile had standing to sue Sacket in his official capacity, because Sacket was responsible for prosecuting crimes in Schoharie County, where Avitabile wished to engage in conduct arguably proscribed by New York law. *Id.* The court further rejected Sacket's immunity defenses and his motion to dismiss under Rule 12(b)(6), holding that Sacket's role as district attorney made him a proper defendant for purposes of Avitabile's official-capacity claim for injunctive relief. *Id.* at 332 (citing *Maloney v. Cuomo*, 470 F. Supp. 2d 205, 208 (E.D.N.Y. 2007); *Nolan v. Cuomo*, No. 11 CV 5827(DRH)(AKT), 2013 WL 168674, at *11–12 & n.7 (E.D.N.Y. Jan. 13, 2013)). The same logic applies with equal force to District Attorney Clark in this case.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motions to dismiss.


Dated:        New York, New York
              August 30, 2019

                                        */s/ Brian Hauss*
                                        Brian Hauss (BH-8861)
                                        American Civil Liberties Union
                                           Foundation
                                        125 Broad Street, 18th Floor
                                        New York, NY 10004
                                        212.549.2500
                                        bhauss@aclu.org