```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MICHAEL PICARD,                         :
                                        :
                         Plaintiff,     :    19cv3059 (DLC)
              -v-                       :
                                        :    OPINION AND ORDER
DARCEL D. CLARK, in her official        :
capacity as District Attorney for       :
Bronx County and MICHAEL MAGLIANO, in   :
his official capacity as Chief of       :
Public Safety for the New York Unified  :
Court System,                           :
                                        :
                         Defendants.    :
                                        :
----------------------------------------X
```

APPEARANCES

For the plaintiff:
Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

For defendant Darcel D. Clark:
Zachary W. Carter
Corporation Counsel for the City of New York
Susan P. Scharfstein
Of Counsel
100 Church Street
New York, NY 10007

For defendant Michael Magliano:
Letitia James
New York Attorney General
Michael A. Berg
Assistant Attorney General
28 Liberty Street
New York, NY 10005

DENISE COTE, District Judge:

Michael Picard ("Picard") brings a First Amendment challenge to a provision of New York's criminal contempt statute, N.Y. Penal Law § 215.50(7) (the "Act"). The Act prohibits speech concerning the conduct of a trial within two hundred feet of a courthouse. On December 4, 2017, Picard was arrested outside the Bronx Hall of Justice for holding a sign and distributing fliers advocating jury nullification.[1] Although the district attorney declined to prosecute, Picard asserts he is too afraid to continue his advocacy outside New York courthouses. He seeks declaratory and injunctive relief under the First and Fourteenth Amendments.

Picard has sued Michael Magliano ("Magliano"), Chief of Public Safety for the New York Unified Court System, and Darcel D. Clark ("Clark"), District Attorney for Bronx County, in their official capacities. The defendants have moved to dismiss Picard's claims on the grounds that he lacks standing to challenge the Act and, with respect to Clark, fails to state a

---

[1] Jury nullification refers to a juror's inherent "power" to ignore the law in her verdict. United States v. Carr, 424 F.3d 213, 219-20 (2d Cir. 2005) (citation omitted). While jury nullification "is, by definition, a violation of a juror's oath to apply the law as instructed by the court," it "has a long history in the Anglo-American legal system." United States v. Thomas, 116 F.3d 606, 614-15 (2d Cir. 1997).

2

claim. For the reasons that follow, the motions to dismiss are denied.

### **Background**

The Act provides, in pertinent part:

> A person is guilty of criminal contempt in the second degree when he engages in any of the following conduct:
>
> . . .
>
> 7. On or along a public street or sidewalk within a radius of two hundred feet of any building established as a courthouse, he calls aloud, shouts, holds or displays placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial.
>
> Criminal contempt in the second degree is a class A misdemeanor.

N.Y. Penal Law § 215.50(7). Under New York law, a class A misdemeanor carries a maximum sentence of one year of imprisonment. Id. § 70.15(1).

The following facts are taken from the complaint and documents attached to the complaint; they are assumed to be true for the purposes of this motion. Picard believes that jury nullification is an effective means to protest unjust laws. Since early 2016, Picard has distributed flyers with information about jury nullification outside courthouses in Connecticut,

Massachusetts, and New York on approximately a dozen different occasions.

On December 4, 2017, Picard stood on the sidewalk outside the Bronx County Hall of Justice and held up a sign that read "Jury Info" and passed out fliers. One side of the fliers read "No Victim? No Crime. Google Jury Nullification." The other side of the fliers read "'One has a moral responsibility to disobey unjust laws' -- Martin Luther King Jr." Picard did not discuss any particular criminal proceedings with anyone.

Shortly after Picard began handing out fliers, a court officer informed him that it is against the law to distribute fliers about jury nullification within two hundred feet of a courthouse. When Picard refused to move, he was arrested.

Several hours later, an assistant district attorney for Bronx County declined to prosecute Picard, explaining in an affidavit:

> The People decline to prosecute the instant matter due to insufficient evidence. On December 4, 2017, at 8:05am, arresting officer observed defendant on the sidewalk in front of the courthouse, holding and displaying a sign with the words printed JURY NULLIFICATION, and displaying pamphlets stating NO VICTIM NO CRIME. When the arresting officer approached Defendant and informed him that he needed to be 200 feet away from the courthouse to protest, the defendant refused to move. Since the officer did not measure the distance between the defendant and the courthouse, the People have insufficient evidence to meet their burden of proof at trial and as such, the charges must be dismissed.

Since his arrest, Picard has not advocated for jury nullification within 200 feet of a courthouse in New York State. He fears that, if he were to do so, he would be arrested and prosecuted for violating the Act. Were it not for the Act, he would continue his advocacy outside of courthouses in New York, including in particular outside the Bronx County Hall of Justice where he was arrested.

Magliano and Clark moved to dismiss the complaint on July 26, 2019. The motion was fully submitted September 13.

### **Discussion**

The defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), asserting that Picard lacks standing to challenge the Act on its face or as applied to him. In addition, Clark moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that it fails to plead a claim against her with sufficient specificity. Both motions are denied.

I. Subject Matter Jurisdiction

When a challenge to subject matter jurisdiction is addressed to the complaint and premised on lack of Article III standing, "[t]he task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."

5

Carter v. HealthPort Tech., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted). It is axiomatic that the irreducible minimum of Article III standing contains three elements. Dubuisson v. Stonebridge Life In. Co., 887 F.3d 567, 573 (2d Cir. 2018). The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Melito v. Experian Marketing Solutions, Inc., 923 F.3d 85, 92 (2d Cir. 2019) (citation omitted). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements "for each claim he seeks to press and for each form of relief that is sought." Davis v. FEC, 554 U.S. 724, 734 (2008).

"For an alleged injury to support constitutional standing, it must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Knife Rights, Inc. v. Vance, 802 F.3d 377, 383 (2d Cir. 2015) (citation omitted). Where a plaintiff asserts injury from an allegedly unconstitutional criminal statute, however, "it is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (citation omitted). Rather, in the context of pre-enforcement challenges

6

to criminal statutes, the Supreme Court has applied a "relaxed" standing inquiry. Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013). Under that standard, a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but arguably proscribed by a statute, and there exists a credible threat of prosecution thereunder. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159, 162 (2014).[2]

When interpreting a challenged statute, courts should do no more than determine whether the plaintiff's proposed interpretation is "reasonable enough." Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 383 (2d Cir. 2000). "If a plaintiff's interpretation of a statute is reasonable enough and under that interpretation the plaintiff may legitimately fear that it will face enforcement of the statute, then the plaintiff has standing to challenge the statute." Pac. Cap. Bank, N.A. v. Connecticut, 542 F.3d 341, 350 (2d Cir. 2008) (citation omitted); see also Hedges v. Obama, 724 F.3d 170, 197 (2d Cir. 2013).

---

[2] This standard also governs the standing inquiry on Picard's overbreadth claim. See Farrell v. Burke, 449 F.3d 470, 499 (2d Cir. 2006) ("We allow a party to bring an overbreadth challenge where that party satisfies the Article III requirement of injury-in-fact, and where it can be expected satisfactorily to frame the issues in the case." (citation omitted)).

7

"The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." Knife Rights, 802 F.3d at 384. While "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical," a credible threat will not be found where a plaintiff's fear of criminal prosecution is "imaginary or wholly speculative." Susan B. Anthony, 573 U.S. at 160, 164 (citation omitted). Because courts are generally willing to "presume that the government will enforce the law," Hedges, 724 F.3d at 197, the standard for a showing a credible threat reflects "a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review." Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016) (citation omitted).

Picard has standing to challenge the constitutionality of the Act. Picard has pleaded that he intends to engage in a course of conduct that is protected by the First Amendment. The First Amendment protects speech concerning the administration of the law so long as that speech does not present a "clear and present danger" to the fair and impartial administration of justice. Wood v. Georgia, 370 U.S. 375, 389 (1962). Picard's interpretation of the Act as prohibiting his intended conduct appears reasonable. The Act prohibits displaying signs within two hundred feet of any courthouse containing matter "concerning

8

the conduct of a trial being held in such courthouse." The advocacy of jury nullification arguably constitutes speech that concerns the conduct of a trial being held in the courthouse. As Picard's prior arrest shows, it is reasonable for him to fear that he will be arrested if he again distributes his fliers within two hundred feet of a New York courthouse. See Vt. Right to Life, 221 F.3d at 383. Although the district attorney declined to prosecute, the basis for that declination -- a failure to "measure the distance between the defendant and the courthouse" -- does little to ease Picard's concern that that Act prohibits his conduct. See Susan B. Anthony, 134 U.S. at 164 (past enforcement supported substantial threat of future prosecution, even though complaint was withdrawn).

Picard having established an injury in fact, there is little difficulty concluding that his injury is both traceable to the defendants' conduct and likely to be redressed by a favorable judicial decision. The threat of prosecution under the Act that has chilled Picard's speech, and a declaration concerning the Act's constitutionality -- whether on its face or as applied -- would redress this alleged injury. Accordingly, Picard has adequately pleaded standing to bring his claims.

In support of their motion to dismiss for lack of standing, the defendants principally argue that the activity in which Picard participated on December 4, 2017 is "plainly" beyond the

9

scope of the Act. According to the defendants, the plaintiff's advocacy for jury nullification would have to relate to a particular trial being held at that moment in the courthouse in order to violate the Act. As a result, the defendants assert that Picard's asserted injury would not be redressed by an injunction and he could have no reasonable fear of future arrest for engaging in the same conduct in which he engaged on December 4, 2017. In support of this argument, the defendants principally rely on N.Y. Civil Serv. Comm'n v. Snead, 425 U.S. 457 (1976) (per curiam). Snead, however, concerned a procedural due process challenge to the New York Civil Service Law. Id. at 457. It did not apply the "relaxed" standing rules that govern a pre-enforcement challenge to a criminal statute and is therefore inapplicable to this case. See Nat'l Org. for Marriage, 714 F.3d at 689.

While the defendants' proposed construction of the Act -- i.e., that it prohibits jury nullification advocacy only if directed at a specific trial -- may be correct, Picard has met his burden to show that his conduct is "arguably proscribed" by the Act. Susan B. Anthony, 573 U.S. at 162. Similarly, Picard's fear of prosecution under the Act is not defeated by a benign interpretation of the Act offered through the defendants' motions to dismiss. Virginia v. Am. Bookseller's Ass'n, Inc.,

484 U.S. 383, 395 (1988). Whatever the merits of Picard's First Amendment challenge, he has standing to pursue his claims.

II. Sufficiency of the Pleading Against Clark

Clark has also moved to dismiss the action because the complaint fails to give her fair notice of her personal involvement in the events underlying Picard's claims. Since Clark is sued in her official capacity and a member of her staff was the person who construed the Act, this motion is denied.

It is well established that, when a plaintiff brings a claim against an officer in her official capacity, that claim represents "another way of pleading an action against an entity of which an officer is an agent." Tanvir v. Tanzin, 894 F.3d 449, 458 (2d Cir. 2018) (citation omitted). In such cases, "the real party in interest is the governmental entity and not the named official." Id. at 459 (citation omitted). "It is well settled that a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act." Schultz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citation omitted).

The complaint states a claim against Clark in her official capacity as District Attorney for Bronx County. New York district attorneys are responsible for prosecuting all crimes and offenses cognizable in the jurisdiction in which the

district attorney sits. See N.Y. Cty. Law § 700. Accordingly, Clark -- and, if replaced, her successor -- played and may again play a role in the enforcement of the Act in Bronx County, where Picard intends to resume his advocacy of jury nullification. One of her assistants decided on December 4, 2017 not to prosecute Picard because there was no evidence that he had been standing within two hundred feet of the courthouse. That assistant's affidavit did not reflect the more narrow construction of the Act on which defendants' rely here. To the extent Clark argues that she should not be named as a defendant because Picard has not established a credible threat of prosecution, that argument is rejected for the reasons already stated.

## Conclusion

The July 26, 2019 motions to dismiss the complaint are denied.

Dated:   New York, New York
         December 2, 2019

                              _____
                                      DENISE COTE
                              United States District Judge