UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL PICARD,

　　　　　　　Plaintiff,

　　　– against –

DARCEL C. CLARK, in her official capacity as
District Attorney for Bronx County,
MICHAEL MAGLIANO, in his official
capacity as Chief of Public Safety for the
New York Unified Court System,

　　　　　　　Defendants.

No. 19 Civ. 3059 (DLC)

## **PRETRIAL MEMORANDUM OF**
## **DEFENDANT MICHAEL MAGLIANO**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
(212) 416-8651
*Attorney for Defendant*
*Michael Magliano*

Michael A. Berg
Assistant Attorney General

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................... 3

ARGUMENT .................................................................................................................................... 5

    I.      THE ACT SHOULD BE CONSTRUED TO AVOID ANY ALLEGED
              FIRST AMENDMENT ISSUES ........................................................................... 5

    II.     PLAINTIFF LACKS STANDING TO CHALLENGE THE ACT ......................... 8

    III.    THE ACT PASSES CONSTITUTIONAL SCRUTINY ...................................... 12

CONCLUSION ............................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page(s)**

*Adams v. Zenas Zelotes, Esq.*,
   606 F.3d 34 (2d Cir. 2010)................................................................15

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006).....................................................................9

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997).......................................................................8

*Barzillai v. United States*,
   137 Fed. Cl. 788 (2018) ...............................................................9

*Boos v. Barry*,
   485 U.S. 312 (1988).....................................................................7

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973)....................................................................13

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envt'l Prot. Agency*,
   846 F.3d 492 (2d Cir. 2017)..........................................................11

*Davis v. Mich. Dep't of Treas.*,
   489 U.S. 803 (1989)....................................................................11

*Dawkins v. State*,
   208 So.2d 119 (Fla. App. 1968).....................................................6

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Constr. Trades Council*,
   485 U.S. 568 (1988).....................................................................7

*Empire HealthChoice Assur., Inc. v. McVeigh*,
   396 F.3d 136 (2d Cir. 2005)...........................................................7

*Erznoznik v. City of Jacksonville*,
   422 U.S. 205 (1975).....................................................................8

*Field Day, LLC v. Cnty. of Suffolk*,
   463 F.3d 167 (2d Cir. 2006)...................................................... 9-10

*Free Libertarian Party, Inc. v. Spano*,
   314 F. Supp. 3d 444 (E.D.N.Y. 2018) ...........................................9

*Greyhound Corp. v. Mt. Hood Stages, Inc.*,
   437 U.S. 322 (1978)....................................................................11

*Hamm v. United States*,
    483 F.3d 135 (2d Cir. 2007)........................................................................................8

*In Touch Concepts, Inc. v. Cellco P'ship*,
    788 F.3d 98 (2d Cir. 2015)....................................................................................... 8-9

*Keepers, Inc. v. City of Milford*,
    807 F.3d 24 (2d Cir. 2015)........................................................................................10

*Kramsky v. Chetrit Grp.*,
    LLC, No. 10 Civ. 2638 (HB), 2011 WL 2326920 (S.D.N.Y. June 13, 2011) ..........8

*Laird v. Tatum*,
    408 U.S. 1 (1972)......................................................................................................10

*Lerman v. Bd. of Elections*,
    232 F.3d 135 (2d Cir. 2000)......................................................................................13

*Libertarian Party of Ct. v. Merrill*,
    No. 15 Civ. 1851 (JCH), 2016 WL 10405920 (D. Conn. Jan. 26, 2016) ......... 12-13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................9

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)..........................................................................................9

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)........................................................................................8

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019)................................................................................................5

*Marcavage v. City of N.Y.*,
    689 F.3d 98 (2d Cir. 2012)........................................................................................12

*Mill Creek Grp., Inc. v. F.D.I.C.*,
    136 F. Supp. 2d 36 (D. Conn. 2001)..........................................................................9

*Nat'l National Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998)............................................................................................ 12-13

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013)......................................................................................10

*Pennekamp v. Florida*,
    328 U.S. 331 (1946)....................................................................................................6

*People v. Wood*,
928 N.W.2d 267 (Mich. Ct. App. 2018), *appeal granted*, 933 N.W.2d 311
(Mich. 2019) ............................................................................................6

*Ragbir v. Homan*,
923 F.3d 53 (2d Cir. 2019)...................................................................7, 12

*Raines v. Byrd*,
521 U.S. 811 (1997)...................................................................................9

*Russo v. Dilieto*,
566 Fed. App'x 85 (2d Cir. 2014)..............................................................8

*Selevan v. N.Y. Thruway Auth.*,
584 F.3d 82 (2d Cir. 2009)........................................................................9

*Thompson v. Cnty. of Franklin*,
15 F.3d 245 (2d Cir. 1994)........................................................................9

*Tunick v. Safir*,
209 F.3d 67 (2d Cir. 2000).........................................................................8

*Turney v. Pugh*,
400 F.3d 1197 (9th Cir. 2005) ...................................................................6

*Turney v. State*,
936 P.2d 533 (Alaska 1997).......................................................................6

*United States v. Heicklen*,
858 F. Supp. 2d 256 (S.D.N.Y. 2012)..................................................... 6-7

*United States v. Hoskins*,
902 F.3d 69 (2d Cir. 2018).......................................................................11

*United States v. Komatsu*,
No. 18 CR 651 (ST), 2019 WL 2358020 (E.D.N.Y. June 4, 2019)............... 7-8, 12

*United States v. Polouizzi*,
697 F. Supp. 2d 381 (E.D.N.Y. 2010) ....................................................14

**FEDERAL CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

U.S. Const., amend. I ....................................................................... passim

U.S. Const., amend. XIV ...........................................................................5

U.S. Const., art. III.............................................................................9, 15

18 U.S.C. § 1504 ...................................................................................................6

Fed. R. Civ. P. 12(b) .........................................................................................2, 12

Fed. R. Civ. P. 12(h)(3) .........................................................................................9

**STATE CONSTITUTIONAL PROVISIONS, STATUS, AND RULES**

N.Y. Penal Law

   art. 195 .............................................................................................................2
   § 1200 ...............................................................................................................2
   §215.50 ..........................................................................................................4, 11
   § 215.50(1) .......................................................................................................11
   § 215.50(2) .......................................................................................................11
   § 215.50(3) .......................................................................................................11
   § 215.50(4) .......................................................................................................11
   § 215.50(7) ................................................................................................1, 10-11
   § 1240 ...............................................................................................................2

**MISCELLANEOUS AUTHORITIES**

2 *Moore's Federal Practice* § 12.30[2] (Matthew Bender 3d ed. 2000) ........................9

Defendant Michael Magliano ("Chief Magliano"), Chief of the Department of Public Safety of the New York State Unified Court System ("UCS"), respectfully submits this pretrial memorandum of law in this action brought by Plaintiff Michael Picard ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff, an advocate of "jury nullification," was detained by New York State court officers on December 4, 2017 while demonstrating outside the Bronx County Hall of Justice.[1] Plaintiff was suspected of violating a provision of New York State's criminal contempt statute, but he was not charged with any offense. In this Action, Plaintiff challenges the constitutionality of that statutory provision, which defines criminal contempt, a misdemeanor, to include calling aloud, shouting, or holding signs within 200 feet of a courthouse concerning the conduct of a trial taking place in the courthouse, the character of the judge or jury hearing the trial, or the desired outcome. *See* N.Y. Penal Law § 215.50(7) (the "Act"). Plaintiff seeks declaratory and injunctive relief against Chief Magliano, who supervises New York State court officers, and Bronx County District Attorney Darcel D. Clark, in their official capacity.

The parties have stipulated to most of the material facts and have stated that they do not believe there is a material factual dispute to be tried. *See* [Proposed] Joint Pretrial Order, §§ V, VII, dated March 6, 2020. Thus, the outcome of this case turns primarily on the Court's interpretation of the Act – an exercise that should be undertaken with caution in light of well-established principles of judicial restraint and federalism. As set forth in the cases discussed below, the Court should construe the Act to avoid any potential Constitutional infirmity.

---

[1] *See* Compl. ¶¶ 15, 18 (describing Plaintiff's advocacy of "jury nullification"). As noted by the Court, "Jury nullification refers to a juror's inherent 'power' to ignore the law in her verdict," and is, "by definition, a violation of a juror's oath to apply the law as instructed by the court[.]" Opinion and Order dated Dec. 2, 2019, at 2, n.1.

Properly understood, the Act was crafted to restrict certain protest activity in the immediate vicinity of a State courthouse that the Legislature deemed likely to disrupt or unduly influence a pending trial or proceeding. As such, it complements the State laws prohibiting jury tampering, witness tampering, obstructing governmental administration, and disorderly conduct. *See generally* N.Y. Penal L. art. 195, §§ 1200, 1240; Magliano Decl. ¶ 9. Conversely, the Act does not restrict expression criticizing the State Courts or advocating jury nullification in general. Nor does the Act prohibit handing out fliers, regardless of their content.

The undisputed facts and Plaintiff's own description of his actions and intentions establish that his conduct on December 4, 2017, and his potential future demonstrations, are not barred by the Act. As a result, the Court should find that Plaintiff lacks standing to sue or, in the alternative, should dismiss his claims on the merits for failure to prove a Constitutional violation.

In its Opinion and Order denying both defendants' motions to dismiss the action, dated December 2, 2019 (ECF No. 32) (the "Rule 12(b) Order"), the Court noted that Chief Magliano's interpretation of the Act as not reaching Plaintiff's conduct "may be correct." Rule 12(b) Order at 10. The Court held, however, that Plaintiff had standing to sue because his contrary interpretation was "reasonable enough" and, under that interpretation, Plaintiff may "legitimately fear that [he] will face enforcement of the statute" in the future. *Id.* at 7. Chief Magliano respectfully requests that the Court re-examine that jurisdictional determination at this phase of the case based upon the language, structure, and intent of the Act or, in the alternative, construe the Act narrowly to avoid striking down a State statute.

Even assuming Plaintiff has standing to sue, the limited scope of the Act defeats his claims on their merits. The Act does not restrict Constitutionally protected advocacy of the kind that Plaintiff engaged in on December 4, 2017, and that he plans to resume in the future. Thus,

the Act does not violate the First Amendment, on its face or as applied to Plaintiff. Further,

Plaintiff's claim that the Act is overbroad is belied by the evidence that it is only rarely enforced.

Accordingly, the Court should find that Plaintiff has failed to establish that the Act is

unconstitutional, dismiss the action in its entirety, and deny all relief sought in the Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

The stipulated facts are set forth in Section VII of the [Proposed] Joint Pretrial Order. In

summary, at about 8 a.m. on December 4, 2017, Plaintiff was demonstrating on the sidewalk

outside the Bronx County Hall of Justice, a New York State courthouse located at 265 East 161

Street, Bronx, New York 10451. (Stipulated Facts ¶¶ 1-2; Magliano Decl. ¶ 14 & State's Ex. 1.)

Plaintiff held a sign that stated "Jury Info" and handed out fliers urging passersby to learn about

jury nullification. (*Id.* ¶¶ 3-4.) He refused to move 200 feet away from the courthouse when

repeatedly directed to do so by court officers, and was taken into custody by Sgt. Vincent Allis,

who told Plaintiff he would be charged with violating the Act. (*Id.* ¶¶ 6-8.) Plaintiff was detained

in a holding cell in the courthouse until approximately 12:40 p.m., when he was transferred to

the custody of the New York City Police Department, which released him at about 6 p.m. (*Id.*

¶ 8; Compl. ¶ 29.) The Bronx County District Attorney's Office declined to prosecute Plaintiff.

(Stipulated Facts ¶ 9.)

The Act provides:

> A person is guilty of criminal contempt in the second degree when
> he engages in any of the following conduct:
>
> * * *
>
> 7. On or along a public street or sidewalk within a radius of two
> hundred feet of any building established as a courthouse, he calls
> aloud, shouts, holds or displays placards or signs containing
> written or printed matter, concerning the conduct of a trial being
> held in such courthouse or the character of the court or jury

> engaged in such trial or calling for or demanding any specified
> action or determination by such court or jury in connection with
> such trial.
>
> Criminal contempt in the second degree is a class A misdemeanor.

N.Y. Penal Law § 215.50.

As set forth in the Declaration of Michael Magliano, dated March 5, 2020, the UCS Department of Public Safety creates and maintains Unusual Occurrence Reports memorializing every arrest made by court officers in the course of their duties. (Magliano Decl. ¶ 11.) UCS maintains a searchable database of these reports, which encompasses all arrests made by court officers since 2005. (*Id.*) A search of that database identified only four arrests for violations the Act from 2005 to 2019, including Plaintiff's arrest – an average of one arrest every 3½ years. (*Id.* ¶¶ 13-14.) Moreover, Plaintiff was the only detainee who was arrested for engaging in generalized protest against the judicial system, outside the context of a particular pending case. By contrast, one of the arrestees was detained after he allegedly "display[ed] and distribut[ed] printed matter concerning the character" of the judge presiding over his court case. (*Id.* ¶ 15 & State's Ex. 2.) Another defendant allegedly "display[ed] a picture pertaining to an ongoing court case." (*Id.* ¶ 17 & State's Ex. 4.) The final incident involved an alleged violent outburst in a courtroom. (*Id.* ¶ 16 & State's Ex. 3.)

Based on his professional experience, Chief Magliano believes "the Act helps protect the integrity of the judicial process, and serves as a valuable adjunct to the statutes prohibiting jury tampering, witness tampering, disorderly conduct, and obstructing government administration." (*Id*. ¶ 9.) "The Act also enables court officers to protect the fairness of the judicial process by preventing parties, and their supporters, from pressuring jurors and witnesses and advocating their desired outcomes outside the courthouse." (*Id.* ¶ 10.)

Also relevant are certain undisputed facts alleged in the Complaint, which Plaintiff is expected to submit as evidence in his trial Declaration. These include the undisputed facts that Plaintiff "has never attempted to influence a juror's vote in a particular case. He does not research which trials are occurring before visiting a courthouse to advocate jury nullification." (Compl. ¶ 17.) Also, on the date of his arrest, Plaintiff "was not aware of any particular cases in which jurors were being impaneled or serving at the time" in the Bronx County Hall of Justice. (Compl. ¶ 22.) "He did not discuss any particular criminal proceeding with anyone." (*Id.*)

The Complaint acknowledges that "the First Amendment does not protect intentional attempts to influence a juror's vote in a particular case," but alleges that "absent such specific intent, speech advocating jury nullification is constitutionally protected." (*Id.* ¶ 38.) It seeks a declaratory judgment that the Act violates the First and Fourteenth Amendments, a permanent injunction against the Act's enforcement, attorneys' fees and costs. (*Id.* at 8.)

## ARGUMENT

## I.     THE ACT SHOULD BE CONSTRUED TO AVOID ANY ALLEGED FIRST AMENDMENT ISSUES

"The First Amendment provides in relevant part that 'Congress shall make no law … abridging the freedom of speech.'"[2] *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). "The Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States." *Id.* Well-established constitutional doctrine protects free expression while affording States latitude to restrict speech that is calculated to interfere with judicial proceedings. Thus, "The First Amendment squarely protects speech concerning judicial proceedings and public debate regarding the functioning of the judicial system, so long as that

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, brackets, footnotes, and citations are omitted.

speech does not interfere with the fair and impartial administration of justice." *United States v. Heicklen*, 858 F. Supp. 2d 256, 274 (S.D.N.Y. 2012). *See also id*. at 271-274 (analyzing cases).

Recognizing this crucial distinction, numerous courts have rejected free speech challenges to statutes prohibiting jury tampering and similar misconduct. *See, e.g., Turney v. Pugh*, 400 F.3d 1197, 1204 (9th Cir. 2005) (holding that Alaska statute "proscribes only speech intended to influence a juror in his or her capacity as a juror in a particular case," and thus "does not reach speech protected by the First Amendment"). "When it comes to the prevention of jury tampering, it has long been held that states may punish or regulate speech intended to interfere with court proceedings or with the right of an accused to have his case decided by an impartial jury." *People v. Wood*, 928 N.W.2d 267, 279 (Mich. Ct. App. 2018), *appeal granted*, 933 N.W.2d 311 (Mich. 2019) (citing *Turney v. State*, 936 P.2d 533, 541 (Alaska 1997) (holding that a narrowly drawn jury-tampering statute did not implicate protected speech under the First Amendment); *Dawkins v. State*, 208 So.2d 119, 122 (Fla. App. 1968) ("Efforts to influence a grand jury in its deliberations respecting specific matters under investigation by it are not shielded by the constitutional right of free speech."); *Pennekamp v. Florida*, 328 U.S. 331, 366 (1946) (Frankfurter, J., concurring) ("In securing freedom of speech, the Constitution hardly meant to create the right to influence judges or juries.").

In *Heicklen*, the Court determined that a federal jury tampering statute, if construed broadly, "would arguably chill protected speech because it could sweep within its prohibitions speech that was not made with the intent of influencing the outcome of a particular case and that did not pose a clear and present danger to the administration of justice." *Heicklen*, 858 F. Supp. 2d at 274-75 (upholding constitutionality of 18 U.S.C. § 1504). To avoid that constitutional difficulty, the Court construed the statute narrowly, holding "that a person violates the statute

only when he knowingly attempts to influence the action or decision of a juror upon an issue or matter pending before that juror or pertaining to that juror's duties by means of written communication made in relation to *a specific case* pending before that juror or in relation to *a point in dispute between the parties before that juror*." *Id.* at 275 (italics in original).

In doing so, the Court applied the canon of constitutional avoidance. As the Court explained: "When a statute's language is ambiguous, it is well settled that federal courts have the power to adopt narrowing constructions of federal legislation. Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible." *Id.* at 271 (quoting *Boos v. Barry,* 485 U.S. 312, 330-31 (1988)). "Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Id.* (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Constr. Trades Council,* 485 U.S. 568, 575 (1988); *also citing Empire HealthChoice Assur., Inc. v. McVeigh,* 396 F.3d 136, 144 (2d Cir. 2005).

Thus, as the Second Circuit recently held, "If an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems." *Ragbir v. Homan*, 923 F.3d 53, 65-66 (2d Cir. 2019). *See also United States v. Komatsu*, No. 18 CR 651 (ST), 2019 WL 2358020, at *3 (E.D.N.Y. June 4, 2019) ("A law is not facially overbroad when a limiting construction would confine the statute to permissible applications.").

The need to avoid unnecessary Constitutional determinations is even greater when a state statute is challenged on federal constitutional grounds. The Supreme Court "has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing

construction." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975), *quoted in Komatsu*, 2019 WL 2348020, at *3. *See also Kramsky v. Chetrit Grp*., LLC, No. 10 Civ. 2638 (HB), 2011 WL 2326920, at *6 (S.D.N.Y. June 13, 2011) (construing state statute "narrowly in order to avoid … Constitutional issues").

As the Supreme Court has directed: "Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 78-79 (1997). The goal of avoiding "unnecessary, and hence premature, constitutional decisions, remains the same whether a state or federal statute is involved." *Tunick v. Safir*, 209 F.3d 67, 75 (2d Cir. 2000).

On its face, the Act does not prohibit Plaintiff's expressive activity – handing out fliers and carrying signs that do not relate to a pending court proceeding. The Act's text and structure establish that no such prohibition was intended. Moreover, assuming the Act is subject to conflicting interpretations, the Court should narrowly construe the Act to avoid the Constitutional questions that a restriction on Plaintiff's speech would entail.

## II.     PLAINTIFF LACKS STANDING TO CHALLENGE THE ACT

"A complaint must be dismissed 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Russo v. Dilieto*, 566 Fed. App'x 85, 86 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists." *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *In Touch Concepts, Inc.*

*v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506 (2006)). *See also* Fed. R. Civ. P. 12(h)(3). Moreover, the "denial of defendant's earlier motion to dismiss for lack of subject matter jurisdiction has no preclusive, or *res judicata,* effect so as to bar the defendant from raising the issue or the court from considering it at a later stage." *Mill Creek Grp., Inc. v. F.D.I.C.*, 136 F. Supp. 2d 36, 41 (D. Conn. 2001) (citing 2 *Moore's Federal Practice* § 12.30[2] at 7 (Matthew Bender 3d ed. 2000) (citing *Thompson v. Cnty. of Franklin,* 15 F.3d 245, 253 (2d Cir. 1994))).

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Selevan v. N.Y. Thruway Auth*., 584 F.3d 82, 89 (2d Cir. 2009) (quoting U.S. Const., art. III, sec. 2)). "'One element of the case-or-controversy requirement' is that plaintiffs must have standing to sue." *Free Libertarian Party, Inc. v. Spano*, 314 F. Supp. 3d 444, 450 (E.D.N.Y. 2018) (quoting *Raines v. Byrd*, 521 U.S. 811, 817 (1997)). Thus, "standing is a threshold jurisdictional issue." *Barzillai v. United States*, 137 Fed. Cl. 788, 802 (2018).

"Three elements make up the 'irreducible constitutional minimum of standing.'" *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). First, the plaintiff "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Field Day, LLC*, 463 F.3d at 175. *Accord*

*Keepers, Inc. v. City of Milford,* 807 F.3d 24, 38-39 (2d Cir. 2015); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013)). Although these requirements are "somewhat relaxed" in the context of a pre-enforcement First Amendment challenge, a plaintiff still "must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Id.* (citing *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

In this case, Plaintiff lacks standing because the Act was not applied to him on December 4, 2017 and will not be applied to him in the future. This is clear from a review of the Act's text and structure. Moreover, even if the Act is found to be ambiguous, it should be construed to avoid a potential constitutional infirmity.

On the date of his arrest, Plaintiff engaged in two distinct brands of expressive activity: handing out fliers and holding a sign. On its face, the Act does not restrict (or even refer to) the act of handing out fliers or printed materials. *See* N.Y. Penal Law § 215.50(7). Thus, Plaintiff's conduct in handing out fliers is beyond the reach of the Act.

Furthermore, the contents of Plaintiff's sign and his fliers were beyond the scope of the Act. His sign merely stated: "Jury Info." (Stipulated Facts ¶¶ 3-4.) The fliers merely asked readers to "Google" information regarding "Jury Nullification," suggested there can be no crime without a victim, and printed a quote, attributed to Dr. Martin Luther King, Jr. regarding the "moral responsibility to disobey unjust laws." (*Id.*) Plaintiff did not criticize "the conduct of a trial being held in such courthouse" or "the character of the court or jury engaged in such trial," and he did not request or demand "any specified action or determination by such court or jury in connection with such trial." N.Y. Penal Law § 215.50(7). In fact, Plaintiff "was not aware of any particular cases in which jurors were being impaneled or serving at the time, and he "did not discuss any particular criminal proceeding s with anyone." (Compl. ¶ 22.) As such, Plaintiff's

alleged injury – the disruption of his expressive activity by court officers – was not caused by the Act or its enforcement, and would not be redressed by an order enjoining enforcement of the Act or declaring it unconstitutional.

This conclusion is reinforced by the plain language and structure of the Act. "Logic and precedent dictate that the starting point in every case involving construction of a statute is the language itself." *United States v. Hoskins*, 902 F.3d 69, 81 n.5 (2d Cir. 2018) (citing *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330 (1978)). By its terms, the Act is limited to certain expressive conduct relating to specified subjects, such as "a trial being held in such courthouse or the character of the court or jury engaged in such trial[.]" N.Y. Penal Law § 215.50(7). The Act's language does not extend to general advocacy of jury nullification.

Moreover, "reasonable statutory interpretation must account for both the specific context in which language is used and the broader context of the statute as a whole." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envt'l Prot. Agency*, 846 F.3d 492, 537 (2d Cir. 2017). A "'fundamental canon of statutory construction' is 'that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Davis v. Mich. Dep't of Treas.*, 489 U.S. 803, 809 (1989)). Applying that rule, the meaning of the Act's language is consistent with its context and the structure of Penal Law § 215.50 as a whole. Each of the statute's subsections prohibits a different kind of misconduct, but they share the common focus on protecting the judicial process from disruption and defiance. For example, Subsection 215.50(1) prohibits "[d]isorderly, contemptuous, or insolent behavior, committed during the sitting of a court, in its immediate view and presence." Subsection 215.50(2) prohibits breaching the peace in a way that "directly tend[s] to interrupt a court's proceedings." Subsections 215.50(3) and (4), respectively, prohibit resisting court mandates and refusing to be sworn as a

witness. Taken as a whole, it is clear that the intent of the statute is not to quell public debate or discussion of the court system, but to prohibit acts that tend to directly interfere with the conduct of judicial proceedings, particularly jury trials. Thus, the Act should be understood as limited to conduct posing that danger, and not as reaching constitutionally protected speech.

The Court did not accept this argument in connection with defendants' motions to dismiss the action. *See generally* Rule 12(b) Order. The Court noted however, that Chief Magliano's interpretation of the Act "may be correct," albeit not the only reasonable interpretation. *Id.* at 10. Thus, it cannot be said as a matter of law that Chief Magliano's interpretation of the Act is incorrect, and Plaintiff has proffered no evidence supporting his contrary understanding of the Act.

Accordingly, even if the meaning of the Act were not clear from its text and context, the doctrine of constitutional avoidance requires the Court to construe the Act as not reaching Plaintiff's conduct. *See Ragbir v. Homan*, 923 F.3d 53, 65-66 (2d Cir. 2019); *United States v. Komatsu*, No. 18-CR-651 (ST), 2019 WL 2358020, at *3 (E.D.N.Y. June 4, 2019). On that basis, Plaintiff's alleged harm is not "fairly traceable" to the Act, and would not be redressed by a judicial determination that the Act is unconstitutional. Similarly, Plaintiff has not shown "a sufficient likelihood" that he will be harmed in the future by the enforcement of the Act, narrowly construed, against him. *See Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) Accordingly, the Court should hold that Plaintiff lacks standing, or alternatively, as discussed below, that Plaintiff's challenge to the Act fails on its merits.

## III. THE ACT PASSES CONSTITUTIONAL SCRUTINY

Plaintiff's facial challenge to the Act is governed by the "overbreadth doctrine." *Libertarian Party of Ct. v. Merrill*, No. 15 Civ. 1851 (JCH), 2016 WL 10405920, at *3 (D. Conn. Jan. 26, 2016) (citing *Nat'l National Endowment for the Arts v. Finley*, 524 U.S. 569, 580

(1998)). To prevail, a plaintiff challenging a statute on First Amendment grounds must establish a "substantial risk" that the law's enforcement will lead to the suppression of constitutionally protected speech. *See Lerman v. Bd. of Elections*, 232 F.3d 135, 144 (2d Cir. 2000) (citing *Finley*, 524 U.S. at 580). The Supreme Court has held that "statutes inhibiting the exercise of First Amendment rights may be invalidated on their face if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973)).

Here, there is no substantial risk that the Act will lead to the suppression of speech protected by the First Amendment. Nor can Plaintiff show that the Act has been (or will be) applied unconstitutionally in a substantial number of cases compared to its valid scope. UCS's database of Unusual Occurrence Reports shows that court officers have only arrested four individuals for alleged violations of the Act from 2005 to 2019 – an average of one arrest every 3½ years across New York State. Magliano Decl. ¶¶ 11-14. Of the four cases, moreover, Plaintiff was the only person detained for generalized protests outside a courthouse, unrelated to a particular pending proceeding. (Magliano Decl. ¶¶ 14-17.)

That is an insubstantial number of arrests, particularly when compared to the Act's "plainly legitimate sweep" in empowering court officers to prevent direct interference with jurors and witnesses in the immediate vicinity of a courthouse. As Chief Magliano states, the Act helps protect the integrity of the judicial process, and serves as a valuable adjunct to the statutes prohibiting jury tampering, witness tampering, disorderly conduct, and obstructing government administration. (Magliano Decl. ¶ 9.)

For similar reasons, there is no substantial likelihood that the Act will be applied to Plaintiff's protests in the future. For example, of the three other arrests since 2005 for violations

of the Act, one defendant allegedly "display[ed] and distribut[ed] printed matter concerning the character" of the judge presiding over his court case, and another defendant "display[ed] a picture pertaining to an ongoing court case." (Magliano Decl. ¶¶ 15, 17.) The final incident involved a violent outburst in a courtroom. (*Id*. ¶ 16.)

Thus, OCA has no record that court officers have ever detained anyone (other than Plaintiff himself) under the Act for expressing generalized criticism of the State courts or advocating jury nullification outside a courthouse. Nor has Plaintiff proffered any evidence that the Act was ever applied to punish or deter protected speech. As a result, Plaintiff has failed to prove that there is a substantial likelihood of the Act being applied against him or others who engage in protected speech in the immediate vicinity of State courthouses.

Plaintiff also purports to challenge the Act "as applied to speech advocating jury nullification." (Compl. ¶ 38.) But that is not an "as-applied challenge" at all. "In an as-applied challenge, the question is whether the statute would be unconstitutional if applied literally to the facts of the case. Factual context and defendant's circumstances are critical." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 387 (E.D.N.Y. 2010). There is no such thing as a "facial challenge" to a statute as applied to a broad category of cases, e.g., "speech advocating jury nullification." (*Cf.* Compl. ¶ 38.) Conversely, the Complaint does not allege that the Act is unconstitutional as applied to Plaintiff on December 4, 2017. To the extent that he may argue differently at trial, he asserts the same facts and seeks the same relief as on his facial challenge, and does not state an independent as-applied claim.

Finally, to the extent that Plaintiff asserts an "overbreadth" challenge, that is no different from his facial challenge. Rather, the "overbreadth" standard is a legal doctrine fashioned to

assist the courts in evaluating facial First Amendment challenges. *See, e.g., Adams v. Zenas Zelotes, Esq.*, 606 F.3d 34, 38 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action against Chief Magliano in its entirety because Plaintiff has failed to establish Article III standing or, in the alternative, has failed to prove his claims, and should grant such further relief as the Court deems appropriate.

Dated: New York, New York
       March 6, 2020

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
*Michael Magliano*


By:      /s/
     Michael A. Berg
     Assistant Attorney General
     28 Liberty Street
     New York, New York 10005
     (212) 416-8651
     michael.berg@ag.ny.gov