UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL PICARD,<br><br>   Plaintiff,<br><br>– against –<br><br>DARCEL D. CLARK, in her official capacity as District Attorney for Bronx County, MICHAEL MAGLIANO, in his official capacity as Chief of Public Safety for the New York Unified Court System,<br><br>   Defendants. | No. 19 Civ. 3059 (DLC)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MICHAEL MAGLIANO'S PRETRIAL MEMORANDUM OF LAW** |

Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
bhauss@aclu.org

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii
INTRODUCTION ....................................................................................................................... 1
ARGUMENT ............................................................................................................................... 3
   I.   Mr. Picard has Article III standing. .................................................................................. 3
   II.  The Act is unconstitutional, both on its face and as applied. ............................................... 5
CONCLUSION .......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002) .................................................................................................... 9

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) .................................................................................................... 4

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969) .................................................................................................... 9

*Bridges v. Cal.*,
  314 U.S. 252 (1941) .................................................................................................... 7

*Copeland v. Vance*,
  893 F.3d 101 (2d Cir. 2018) ...................................................................................... 11

*Cracco v. Vance*,
  376 F. Supp. 3d 304 (S.D.N.Y. 2019) ....................................................................... 11

*Cutting v. City of Portland*,
  802 F.3d 79 (1st Cir. 2015) ......................................................................................... 8

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) .................................................................................................... 9

*Hodge v. Talkin*,
  799 F.3d 1145 (D.C. Cir. 2015) ................................................................................ 11

*Kungys v. United States*,
  485 U.S. 759 (1988) .................................................................................................... 8

*Lewis v. New Orleans*,
  415 U.S. 130 (1974) .................................................................................................... 9

*McCullen v. Coakley*,
  573 U.S. 464 (2014) .................................................................................................... 8

*People v. Iannicelli*,
  449 P.3d 387 (Colo. 2019) .......................................................................................... 5

*Police Dep't v. Mosley*,
  408 U.S. 92 (1972) ...................................................................................................... 9

*Ragbir v. Homan*,
  923 F.3d 53 (2d Cir. 2019) ......................................................................................... 4

*Reno v. ACLU*,
  521 U.S. 844 (1997) .................................................................................................... 8

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .................................................................................................... 4

*Turney v. Pugh*,
   400 F.3d 1197 (9th Cir. 2005) .................................................................................................. 7

*United States v. Heicklen*,
   858 F. Supp. 2d 256 (S.D.N.Y. 2012) .............................................................................. 5, 6, 7

*United States v. Komatsu*,
   18-cr-651 (ST), 2019 WL 2358020 (E.D.N.Y. June 4, 2019) ..................................................... 4

*United States v. Stevens*,
   559 U.S. 460 (2010) ................................................................................................................. 8

*Va. v. Am. Booksellers, Inc.*,
   484 U.S. 383 (1988) ................................................................................................................. 6

*Verlo v. Martinez*,
   820 F.3d 1113 (10th Cir. 2016) ............................................................................................... 6

*Vt. Right to Life Comm. v. Sorrell*,
   221 F.3d 376 (2d Cir. 2000) ............................................................................................ 4, 6, 8

*Wood v. Ga.*,
   370 U.S. 375 (1962) ................................................................................................................. 7

**Statutes**

N.Y. Penal Law § 195.05 .............................................................................................................. 6

N.Y. Penal Law § 215.10 .............................................................................................................. 6

N.Y. Penal Law § 215.25 ........................................................................................................... 6, 8

N.Y. Penal Law § 215.50 ..................................................................................................... 1, 3, 5

**Other Authorities**

*Placard*, Merriam-Webster Online Dictionary ............................................................................. 3

Plaintiff Michael Picard respectfully submits this response in opposition to Defendant Magliano's Pretrial Memorandum of Law (Magliano Br.), Doc. 42.

## INTRODUCTION

As set forth in Mr. Picard's Pretrial Memorandum of Law, New York Penal Law § 215.50(7) (the "Act") is facially unconstitutional because it imposes a content-based restriction on speech in traditional public forums and because it is substantially overbroad. The Act is also unconstitutional as applied to Mr. Picard's jury nullification advocacy. Chief Magliano's defense of the Act rests almost entirely on the constitutional avoidance canon. He argues that the Act should be narrowly construed to prohibit only speech that concerns a *particular* trial. According to Chief Magliano, this narrowing construction of the Act defeats Mr. Picard's claims for two reasons: (1) The proposed narrowing construction negates Mr. Picard's standing to challenge the Act, because Mr. Picard does not advocate jury nullification in specific case. (2) The proposed narrowing construction defeats Mr. Picard's claims on the merits, because it limits the Act's scope to constitutionally unprotected speech. Neither of these arguments holds water.

The Court properly rejected Chief Magliano's standing argument in its Order denying his Rule 12(b)(1) motion to dismiss. As the Court recognized in its Order, a plaintiff bringing a pre-enforcement First Amendment challenge need only demonstrate that his proposed interpretation of the challenged statute is "reasonable," not that it is the "only" or even the "best" interpretation. Here, Mr. Picard has established that the Act could be read to prohibit his jury nullification advocacy. Indeed, he has already been arrested for violating the Act. If the Act plainly excludes Mr. Picard's jury nullification advocacy, that fact seems to have eluded both the arresting officer and the assistant district attorney who reviewed Mr. Picard's case. Thus, Mr. Picard's interpretation of the Act is reasonable enough to establish standing. The constitutional

1

avoidance canon, a method for choosing between competing plausible interpretations of a statute, has no application to this standing analysis, which requires only that Mr. Picard demonstrate his interpretation is plausible.

The avoidance canon is equally unavailing on the merits, because it does not resolve the Act's constitutional defects. Even if the Act were construed to apply only to speech about a particular case, the Act would still impose a content-based restriction on speech in traditional public forums, and it would still be unconstitutionally overbroad. To be sure, courts have recognized that speech is not protected by the First Amendment if it is (1) directed at jurors with (2) the intent to influence the outcome of a (3) specific case, because such speech poses a clear and present danger to the administration of justice. However, the Act is plainly not limited to speech directed at jurors, nor is it limited to speech intended to influence the outcome of a case. Without these qualifications, speech concerning a particular case is fully protected by the First Amendment. Chief Magliano has not even attempted to carry his burden of demonstrating that the Act's content-based restriction on speech satisfies strict or even intermediate scrutiny. Alternatively, he has not rebutted Mr. Picard's demonstration of substantial overbreadth.

Finally, Chief Magliano argues that Mr. Picard cannot seek prospective as-applied relief for his jury nullification advocacy. But just last year, in *Copeland v. Vance*, the Second Circuit held that claims for prospective as-applied relief are viable if the plaintiff tailors his as-applied claim to the specific conduct he would pursue but for fear of future enforcement. That is precisely what Mr. Picard has done here.

**ARGUMENT**

**I.    Mr. Picard has Article III standing.**

As set forth in Plaintiff's Pretrial Memorandum of Law, Mr. Picard has standing to bring this pre-enforcement First Amendment challenge against the Act, because: (1) he intends to engage in expressive activities that are arguably affected with a constitutional interest; (2) his expressive activities are arguably proscribed by the Act; and (3) there exists a credible threat of enforcement, especially in light of Mr. Picard's prior arrest and brush with prosecution. Plaintiff's Pretrial Memorandum of Law (Pl.'s Br.) at 6–8, Doc. 44. Chief Magliano urges the Court to apply the constitutional avoidance canon to hold that the Act applies only to speech concerning a *particular* trial pending inside a nearby courthouse. Magliano Br. at 8, Doc. 42. Narrowly construed, the Act would not prohibit Mr. Picard's jury nullification advocacy, since Mr. Picard does not discuss particular cases as part of his advocacy. So, the argument goes, a narrowing construction would negate Mr. Picard's standing to challenge the Act at all.[1]

This is nothing more than a rehash of Chief Magliano's motion to dismiss. There, Chief Magliano argued that Mr. Picard lacks standing under the second prong, because the Act "must be construed narrowly as applying only to expressive conduct concerning a pending trial in the

---

[1] Chief Magliano also asserts that Mr. Picard's "conduct in handing out fliers is beyond the reach of the Act," because "[o]n its face, the Act does not restrict (or even refer to) the act of handing out fliers or printed materials." Magliano Br. at 10, Doc. 42. The Act does, however, prohibiting holding or displaying "placards or signs containing written or printed matter." N.Y. Penal Law § 215.50(7). This prohibition could easily include flyers. "Placard," for example, has been defined as "a notice posted in a public place." *Placard*, Merriam-Webster Online Dictionary, https://bit.ly/2MGZtnt. The court officer who arrested Mr. Picard, for instance, believed that the Act applied to Mr. Picard's flyers. Proposed Joint Pretrial Order, Statement of Stipulated Facts ¶ 6, Doc. 43. And at least one other individual was arrested for violating the Act because he "display[ed] and distribut[ed] printed matter." State's Exhibit 2; Magliano Declaration ¶ 15. In any event, Chief Magliano does not dispute that Mr. Picard's jury nullification advocacy includes the display of signs, so the Court need not resolve this issue to conclude that Mr. Picard has standing.

3

subject courthouse." Reply Memorandum of Law in Support of Defendant Michael Magliano's Motion to Dismiss the Amended Complaint at 4, Doc. 28. The Court rejected this argument, holding that Mr. Picard "has met his burden to show that his conduct is 'arguably proscribed' by the Act." Order at 10, Doc. 32 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014)). Although Chief Magliano now urges the Court to reconsider its analysis, he does not identify any new facts, authorities, or arguments that support a different result.

Chief Magliano's proposed approach directly contradicts the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, which held that plaintiffs raising a pre-enforcement First Amendment challenge need only demonstrate that their "intended future conduct is 'arguably . . . proscribed by [the] statute' they wish to challenge." 573 U.S. 149, 162 (2014) (alterations in original) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). It also contradicts the Second Circuit's decision in *Vermont Right to Life Committee v. Sorrell*. There, the Second Circuit held that even though "there may be other, perhaps even better," construction of the statutory text than the one proffered by the plaintiff, the plaintiff has standing so long as its interpretation "is reasonable enough that it may legitimately fear that it will face enforcement of the statute by the State." 221 F.3d 376, 383 (2d Cir. 2000). Chief Magliano makes no attempt to reconcile his argument with these precedents, nor does he cite any cases where the constitutional avoidance canon was applied to negate a plaintiff's standing.[2]

---

[2] The cases Chief Magliano does cite are entirely inapposite. *See Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (holding that the constitutional avoidance did not apply to a jurisdiction stripping statute, because the statutory text was clear); *United States v. Komatsu*, 18-cr-651 (ST), 2019 WL 2358020, at *3 (E.D.N.Y. June 4, 2019) (applying the constitutional avoidance canon on the merits and interpreting a federal regulation to avoid First Amendment substantial overbreadth concerns).

As the Court previously recognized, Mr. Picard's interpretation of the Act's plain text to prohibit jury nullification advocacy is "reasonable" enough to satisfy Article III, because "[t]he advocacy of jury nullification arguably constitutes speech that concerns the conduct of a trial being held in the courthouse." Order at 9, Doc. 32. Nothing in the context or structure of N.Y. Penal Law § 215.50 rules out Mr. Picard's reasonable interpretation of the Act's terms. Indeed, both the New York Court Officer who arrested Mr. Picard and the Assistant District Attorney who executed the Affidavit Declining Prosecution apparently thought that Mr. Picard's jury nullification was within the scope of the Act. Joint Pretrial Order, Statement of Stipulated Facts ¶¶ 6–9; Plaintiff's Exhibit 3. And, in other jurisdictions, prosecutors have argued that similar statutory language criminalizes jury nullification advocacy outside courthouses *even when* the advocacy is not targeted to a specific trial. *United States v. Heicklen*, 858 F. Supp. 2d 256, 275 (S.D.N.Y. 2012); *People v. Iannicelli*, 449 P.3d 387, 394 (Colo. 2019) (en banc). Despite what Chief Magliano may say, Mr. Picard is not required to proffer further evidence to demonstrate that his interpretation of the law is reasonable enough to establish standing. Magliano Br. at 12, Doc. 42.

**II.     The Act is unconstitutional, both on its face and as applied.**

As discussed in Mr. Picard's pre-trial memorandum, the Act imposes a facially content-based restriction on speech in traditional public forums—it criminalizes speech, on public streets and sidewalks, about judicial proceedings taking place within a nearby courthouse. Pl.'s Br. at 8–16, Doc. 44. Chief Magliano cannot carry his burden under strict, or even intermediate, scrutiny because the Act is not narrowly drawn to the State's interest in protecting judicial proceedings against improper influence. The State has numerous less restrictive alternatives at its disposal to advance this interest, without criminalizing speech about the criminal justice system on public

streets and sidewalks. For example, the State could vigorously enforce its existing laws against jury tampering, witness tampering, and obstructing governmental administration. N.Y. Penal Law §§ 195.05, 215.10, 215.25. The State could also enact appropriate content-neutral time, place, and manner restrictions outside the courthouse, such as a restriction on the use of sound trucks during hours of courthouse operation. *See Verlo v. Martinez*, 820 F.3d 1113, 1137 n.9 (10th Cir. 2016). And the courts themselves could instruct jurors to disregard extrajudicial statements about cases under consideration. *Heicklen*, 858 F. Supp. 2d at 275 n.23. Chief Magliano has not shown that these alternative measures, taken together, are insufficient to protect judicial proceedings.

Chief Magliano offers no response to Mr. Picard's claims that the Act is unconstitutional because it imposes a content-based restriction on speech in a traditional public forum, despite the fact that this claim was clearly identified in both the Complaint and the Proposed Joint Pretrial Order. Complaint ¶¶ 35, 36, Doc. 1; Proposed Joint Pretrial Order at 4, Doc. 43. Chief Magliano does not dispute that the Act expressly restricts speech in traditional public forums, he does not dispute that the Act facially criminalizes speech on the basis of its subject matter, and he does not argue that the Act could satisfy heightened scrutiny. Instead, he argues that the Act would not be substantially overbroad if it were construed to apply only to speech concerning a *specific* trial taking place inside a nearby courthouse.

Assuming the Act is "readily susceptible" to this narrowing construction, *Vt. Right to Life Comm.*, 221 F.3d at 386 (citation and internal quotation marks omitted), Chief Magliano's reliance on the constitutional avoidance canon is misplaced. The canon does not apply here, because the proposed narrowing construction does not resolve the Act's constitutional defects. *See Va. v. Am. Booksellers, Inc.*, 484 U.S. 383, 397 (1988) (holding that the constitutional

6

avoidance canon applies only if the challenged statute is "'readily susceptible' to a narrowing construction that would make it constitutional"); *see also* Pl.'s Br. at 18–20, Doc. 44.

Speech concerning judicial proceeding is political speech entitled to the full protection of the First Amendment, so long as it does not pose a "clear and present danger to the administration of justice." *Wood v. Ga.*, 370 U.S. 375, 389 (1962); *Heicklen*, 858 F. Supp. 2d at 273. Applying this framework, courts have held "that the narrow category of speech knowingly made to jurors outside of an official proceeding and 'with the intent to influence the outcome of a specific case' [is] not protected by the First Amendment." *Heicklen*, 858 F. Supp. 2d at 274 (citing *Turney v. Pugh*, 400 F.3d 1197, 1201 (9th Cir. 2005)).

This narrow exception to the First Amendment has three specific limitations, none of which are reflected in the Act's text. The exception applies only to speech (1) knowingly made to jurors outside an official proceeding and (2) with the intent to influence the outcome (3) of a specific case. Speech about a particular, without further qualification, is fully protected by the First Amendment. Otherwise, "anyone who might wish to give public expression to his views on a pending case involving no matter what problem of public interest, just at the time his audience would be most receptive, would be as effectively discouraged as if a deliberate statutory scheme of censorship had been adopted." *Bridges v. Cal.*, 314 U.S. 252, 269 (1941) (holding that letters published in local newspapers about pending litigation were protected under the First Amendment); *accord Wood*, 370 U.S. at 383. "Decisions applying the clear and present danger test articulated in *Bridges* and *Wood* have consistently held that speech may be restricted only if that speech 'is directed to inciting or producing' a threat to the administration of justice that is both 'imminent' and likely to materialize." *Heicklen*, 858 F. Supp. 2d at 273.

7

Even if the Act could be construed to include an implicit specific case requirement, it cannot be limited to speech knowingly made to jurors or speech made with the criminal intent to obstruct justice. Nothing in the Act's text supports such a narrowing construction, and this Court cannot "rewrite a . . . law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (alteration in original) (citations and internal quotation marks omitted); *Vt. Right to Life Comm.*, 221 F.3d at 386 ("For a federal court to adopt such a narrowing construction of a state statute, the statute must be readily susceptible to the limitation." (citations and internal quotation marks omitted)). Moreover, New York already has a jury tampering statute that prohibits precisely this conduct. N.Y. Penal Law § 215.25 ("A person is guilty of tampering with a juror in the first degree when, with intent to influence the outcome of an action or proceeding, he communicates with a juror in such action or proceeding, except as authorized by law."). *See also Kungys v. United States*, 485 U.S. 759, 778 (1988) ("[T]he cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant."). Thus, even if the Court were to adopt Chief Magliano's proposed narrowing construction, the Act would still imposes a content-based restriction on a large amount of presumptively protected speech on public streets and sidewalks.

As a content-based restriction on speech in traditional public forums, the Act is unconstitutional on its face, even if some permissible applications of the Act could be hypothesized. *See Cutting v. City of Portland*, 802 F.3d 79, 86 (1st Cir. 2015) ("[T]he seemingly tailored aspects of an untailored restriction on speech in a traditional public forum do not automatically save such a restriction from facial challenge." (citing *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)); *see also, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (holding that the

8

Communications Decency Act imposed an unconstitutional content-based restriction on speech, even though the Act encompassed unprotected obscenity). A statute that prohibits labor picketing on public streets and sidewalks within 150 feet of a school is facially unconstitutional because it is content based, *see Police Dep't v. Mosley*, 408 U.S. 92, 102 (1972), despite the fact that some labor picketing is unprotected under the First Amendment, *see Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). By the same token, the Act's restriction on speech about trials pending inside a nearby courthouse is facially unconstitutional because it is content based, even if the Act could also be applied to prohibit some unprotected speech.

Alternatively, the Act is facially unconstitutional under the overbreadth doctrine because it prohibits a substantial amount of constitutionally protected speech relative to any plainly legitimate sweep it might have. As already discussed, the Act does not require the government to demonstrate that the defendant knowingly interacted with a juror, that the defendant acted with the specific intent to obstruct justice, or that the speech otherwise posed a clear and present danger to the due administration of justice. The absence of these essential elements renders the Act substantially overbroad. *See, e.g.*, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 256 (2002) (holding that provisions of the Child Pornography Prevention Act were substantially overbroad because it "cover[ed] materials beyond the categories recognized in" the Court's cases recognizing First Amendment exceptions for child pornography and obscenity); *Lewis v. New Orleans*, 415 U.S. 130, 132 (1974) (holding that a Louisiana statute prohibiting "opprobrious language" was substantially overbroad because it extended beyond unprotected "fighting words"); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam) (holding that Ohio's criminal syndicalism statute was facially invalid because it was not limited to "advocacy [that] is

directed to inciting or producing imminent lawless action and is likely to incite or produce such action").

The prior enforcement actions identified by Chief Magliano do not support his contention that the Act has been narrowly applied to unprotected speech. Chief Magliano identifies three other arrests for violations of the Act between 2005 and 2019. One of those alleged violations involved a man who was arrested for "displaying and distributing printed matter" in front of the courthouse concerning the character of the judge presiding over his court case. State's Exhibit 2; Magliano Declaration ¶ 15. Another arrest involved a woman who displayed "a picture pertaining to an ongoing court case." State's Exhibit 4; Magliano Declaration ¶ 17. Chief Magliano has not submitted any evidence that either of these arrests involved an intentional attempt to tamper with jurors or otherwise obstruct the administration of justice. There is nothing to distinguish these arrests from a lone death penalty protestor standing outside the courthouse during a capital punishment prosecution with a picture of the defendant.[3]

The Act is also unconstitutional as applied to Mr. Picard's jury nullification advocacy. Chief Magliano does not dispute that Mr. Picard's jury nullification advocacy is protected under the First Amendment, nor does he argue that the Act could constitutionally suppress Mr. Picard's advocacy. Instead, Chief Magliano contends that Mr. Picard's as applied challenge must fail because "[t]here is no such thing as a 'facial challenge' to a statute as applied to a broad category of cases, e.g., speech advocating jury nullification." Magliano Br. at 14, Doc. 42. To the contrary, the Second Circuit recently made clear that prospective, as-applied challenges are

---

[3] The final arrest identified by Chief Magliano was apparently a misapplication of the Act to a person who allegedly "interrupt[ed] proceedings by refusing several lawful orders to be seated and remain quiet or leave the courtroom." State's Exhibit 3; Magliano Declaration ¶ 16. The Act applies only to speech "[o]n or along a public street or sidewalk within a radius of two hundred feet" of a courthouse," N.Y. Penal Law § 215.50(7), not to speech or conduct in the courthouse itself.

permissible, so long the plaintiff "tailor[s] the proof to the specific conduct that she would pursue but for fear of future enforcement." *Copeland v. Vance*, 893 F.3d 101, 112–13 (2d Cir. 2018); *accord Cracco v. Vance*, 376 F. Supp. 3d 304, 313–15 (S.D.N.Y. 2019). *See also Hodge v. Talkin*, 799 F.3d 1145, 1156–57 (D.C. Cir. 2015) (construing the plaintiff's prospective challenge to a statute restricting displays on the Supreme Court grounds as a hybrid facial/as-applied challenge). The joint stipulation of facts, Mr. Picard's affidavit, and Plaintiff's exhibits all provide the requisite factual detail to establish Mr. Picard's right to as applied relief.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in Plaintiff's favor and grant the declaratory and injunctive relief requested in the Complaint.

Dated: March 13, 2020

/s/ Brian Hauss
Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
bhauss@aclu.org

*Counsel for Plaintiff*

11